# WILLIAM FINNEY vs. THE ST. CHARLES COLLEGE.

Whenever a deposition taken in a former suit is admissible as evidence in a subsequent suit between the same parties, a copy may be read upon proof of the loss of the original.

## APPEAL FROM ST. LOUIS COURT OF COMMON PLEAS.

### STATEMENT OF THE CASE.

This was an action of covenant in the St. Louis common pleas, brought in August, A. D. 1848, by the St. Charles College against William Finney, on his alleged sealed note, which is in the following words, viz:

"$1000. We hereby bind ourselves to pay to the curators of St. Charles College, one thousand dollars at the end of ten years from this date without defalcation, with interest to be paid

semi-annually from date, at the rate of six per cent. per annum.   Witness our hands and seals, this 1st day of November, in the year of our Lord one thousand eight hundred and thirty-six.

Attest,                                             J. & W. FINNEY, [Seal.]

J. Greene.

The general issue was pleaded, and the case was tried in March, 1849, when a judgment was rendered against Finney, from which he appealed.   On the trial, the sealed note was first offered in evidence, and its reception objected to, on the ground that the plaintiff was not proved to be a corporate body, which objection was overruled.   The plaintiffs then read in evidence the act of assembly incorporating curators of St. Charles college, approved the 3rd February 1837.   The plaintiffs then offered in evidence what purported to be a copy of a deposition of one Greene, taken by a justice of the peace at Boonville in another case in 1846, pending in the St. Louis circuit court between the same parties.   The only proof that it was a copy, was the statement of T. Polk, the plaintiffs counsel, that he believed it to be a copy ; that it was lent to him as such by the magistrate who took it, and that he had read the original deposition in evidence on the former case.   It was proved that Greene had died, and that the original deposition had been mislaid and could not be found.   The reception of this copy in evidence was objected to as incompetent, inasmuch as the deposition had been taken in another suit, and at any rate, the original should be produced.   The objections were overruled and the copy read.

The defendant gave in evidence a subscription paper without date, signed by the defendant, and sundry other persons, with sums of money opposite to their names respectively, $1000 being opposite to defendant's name.   This paper recited that George Collier had founded and established an institution called St. Charles college, and "placed it" to the Missouri conference of the Methodist church, on condition that the conference should raise for it an endowment, and that the conference had appointed a committee to form a board of trustees, and prepare a charter, and organize the college.   It then stated that the subscribers contributed the sums annexed to their names for the purpose of endowing St. Charles college, the said money subscribed to form a permanent fund, the interest alone of which to be used for defraying the current expenses of the college, and if the sum subscribed should be more than sufficient for said purposes, then the surplus might be used in extending and furnishing the college buildings. The money was to bear interest at 6 per cent. payable semi-annually.   This paper was signed by the subscribers in May, 1836, and named the committee who were to act as aforesaid.

Evidence was given tending to prove that such subscription was procured from defendant by representations made to him, that the institution would be a Methodist institution, and under the control and management of the Methodist church of which defendant was a member ; and that if the Methodist would raise $15,000, George Collier would give the college into their hands ; and that the Missouri annual conference would have the control and management of it, which conference was the governing authority of the Methodist church, and consisted entirely of preachers ; and that the subscription was obtained of defendant through his reliance on these representations.   It was proved that the note sued on, was given for the amount so subscribed, and evidence was given tending to show that in giving it defendant still relied on said representations.

The corporation book was given in evidence showing the acceptance of said charter by the persons named in it, and organization and action under it even since its passage, or immediately after.   The amendment of the charter, passed in 1847, was read, and proof given that the assurance required therein never had been given.   It was proved that the title of the college buildings and property was made to and vested in said corporation, by deed of George Collier, dated the 21st August, 1838, to "the board of curators of St. Charles college," forever, " to be used forever for school purposes, and not to be appropriated or used for any other purposes."

The following instructions asked by defendant were refused:

1st.  If the jury find from the evidence, that the bill sued on was given for a subscription made in favor of a private unincorporated institution, using the style of such private institu-

WILLIAM FINNEY vs. THE ST. CHARLES COLLEGE.

tion, which subscription was made before the plaintiff was incorporated, to written articles defining such private institution and its character, then there can be no recovery on this bill.

3d. That if the funds comprehending the bill sued on have been, by reason of the charter obtained by plaintiff, divested from the control and management stipulated for, as the consideration of the bill sued on, there can be no recovery in this action.

3d. If the jury find from the evidence that the bill sued on was a subscription obtained upon assurances relied on by defendant, that it was for the endowment of an institution to be under the control and management of the Methodist annual conference, and that the same institution has been legally free from such control and management, and still is, then the consideration of said bill has failed, and the plaintiffs cannot recover.

The court, of its own motion, gave the following instruction :

"If the jury believe from the evidence that the defendant was induced to give the bond sued on, by the assurance that the institution for whose benefit it was designed, should be under the control of the Missouri conference, and that the conference, by its committee or agents, selected the corporators, and selected them with a view to subjecting the general management of the institution to the wishes of the conference, and that practically the conference has exerted over it such general control, the assurance given has been sufficiently complied with.

After verdict, a notice for a new trial was made on all the points previously passed upon by the court; and because it was against law and evidence, and the weight of evidence, and against instructions, and for too large an amount, and because the copy of the deposition was admitted.

Exceptions were taken, in the progress of the case, to all the action and decisions of the court, adverse to defendant.

## SPALDING for appellant.

I. The consideration of the sealed note sued on could be, and *was* properly inquired into in the court below. Rev. Code of 1845, p. 832, sec. 19, 20 and 21 ; acts of 1846-7, p. 108. The act to simplify proceedings at law, sec. 1 and 6, authorizes all defences to be made under the general issue.

For the purposes of the defence, therefore, the bill sued on was no more than an unsealed instrument or simple contract. Story on promissory notes, sec 184. Failure of consideration is equivalent to want of consideration.

II. The first instruction asked by defendant below, asserts that if the subscription of the $1000 was to a private association of individuals, by a certain name, before any act of incorporation, and the note was given payable to the same name, that the inference of law was that it was payable to the incorporated association.

III. By the second instruction, the jury are directed that there can be no recovery if the funds of the college comprehending the bill sued on had been directed from the control and management stipulated for as the consideration of the bill. In other words, that the consideration had failed, if the facts hypothetically stated were true.

This is merely a definition of the failure of consideration under the circumstances. If such control and management were the consideration of the note, and if it was taken away, then the whole consideration, or *moving cause*, of giving the note failed, and there ought to be no recovery.

IV. The instruction given by the court was wrong in stating that *the assurance given to the defendant was sufficiently complied with.*

It is not a matter of law decided by the court, but of fact. The court assumes, that the bond was given after the act of incorporation was passed, and therefore that there could be no other control except that specified in the instruction; whereas, it was for the jury to judge when it was given, and whether the control intended was *indirect* by appointment of corpo-

rators, &c., or whether it was direct, having the legal management and superintendence of the college. What right had the court to take this plea from the jury?

2. There might be two kinds of control, one *immediate* and *legal*, and *authoritative :* the other, merely persuasive, but not *l·gil ;* which of these was intended, and was the consideration of the bond, or rather entered into the consideration, was for the jury to judge from all the circumstances of the case, and it did not belong to the court to decide. ·

V. The copy of the deposition of Greene was improperly admitted in evidence.

1. No case has gone so far as to let in a copy of a deposition taken in another case; and the principle adopted by some courts ought not to be extended.

2. It is wrong to admit a deposition taken in another case; it is wrong and dangerous in principle, as it operates a surprise; as it will compel every party to take every deposition in every trifling case, with the care and caution necessary in perpetuating testimony. As it is impossible in taking a deposition for a person to foresee all the occasions in which it may be produced, and therefore it is impossible that he should so take it, as to fit such occasions, and bring out from the witness the facts necessary for them.

3. The statute does not contemplate such a use of depositions. Rev. Code of 1845, p. 416 and p. 419, sec. 20, the reading of them is confined to the case in which taken; and the use of them beyond, and in other cases, is not provided for in the act, but by implication denied.

4. There was an act for perpetuating testimony. Rev. Code of 1845, p. 792, covering the whole ground, and expressly giving notice that the deposition could be read in all *future litigations*. Thus the party is put upon his guard. He knows that he must, at his peril, examine the witness as to all things that relate to the subject matter. He is put in possession of all facts that are to be proved, that he may deliberate on their bearing, and be prepared to cross-examine, with reference to all possible future controversies.

But in the taking of a deposition in the ordinary way, the mind is drawn only and entirely to the matter litigated in that suit; and the effect on the cross examination, is of course, apportioned to the magnitude of the controversy. The parties are aware of the nature of the suit—know what is in issue in it, and of course, ought to be bound by the examination, once legally made, of the witness, whether it be oral or written, in case of the witness' death.

5. The case in 4 Miss. Rep. 113, is wrong in principle; seems not to have been debated, and one judge (Wash) was absent that whole term. It was not the decision of a full court.

VI. The third instruction asked by defendant below, and refused, is substantially like the second, but considerably modified in this, that it makes the *legal control* and management of the institution, the consideration of the note, if the facts hypothetically stated, are found by the jury.

## Polk for appellee.

1. The court below committed no error in allowing the note sued on, to be read in evidence to the jury. It was charged to have been executed by defendant, and was so declared on, and its execution not denied on oath. If then, when it was made, the plaintiff had legal existence as a civil person, it was clearly competent, and when the objection was made, based on the ground, that there was no such person as the plaintiff, it was stated by plaintiff's counsel, that his next piece of evidence would be the charter of incorporation creating the plaintiff as a civil person, and this evidence was accordingly next produced. The note was defendant's instrument executed by him. It, therefore, did not lie in his mouth to object to it.

2. The court below, did not err in admitting the copy of Jesse Greene's deposition.

The original of the copy offered, was a deposition taken in a prior case between the same parties on the same instrument sued on in this case. The first suit having been for instalments of interest, and the present one, for principle and interest subsequently accrued.

Now the original deposition would have been competent. This has been expressly decided by this court.

WILLIAM FINNEY vs. THE ST. CHARLES COLLEGE.

See Tindall vs. Johnson, 4 Mo. R. 113.

The paper offerred, purporting to be a copy of Greene's deposition, was proved to be such copy.    And the original, which had been on file in the case which it was offered in evidence, was also proved to be lost or mislaid, and could not be found or produced.  · And the deponent Jesse Greene was proved to have died before the commencement of this suit.

Now the original deposition being lost, it was competent to give the original in evidence. For even a record which is lost may be proved by parol testimony.

Graham et al vs. O'Fallon, 3 Mo. R. 510; note 723, p. 387 of Phil. Ev. and authorities there cited.

3.  The first instruction prayed by defendant's counsel was properly refused.

Now even if the bill sued on, had been given for a subscription to a private unincorporated institution before its incorporation, yet if such subscription was made for the use and benefit of such institution, and with the view that the institution was afterwards to be incorporated in the same name, and for the same purposes it had before incorporated, and if afterwards the institution was actually so incorporated, and continued after its incorporation as it had been before, then undoubtedly the fact of incorporation would not be sufficient to prevent the plaintiffs from recovering.

4.  The common pleas court committed no error in refusing to give the second instruction prayed by defendants counsel.

The evidence before the jury did not justify the giving this instruction.

1.  There was nothing of evidence before them, either showing or tending to show that any of the funds of the college had been diverted from the control or management stipulated for.

2.  In the next place, the instruction assumes it as a fact that the consideration of the bill sued on, was the control and management of the college, by the Mo. annual conference.  Whereas, this was a matter of fact, which had to be found by the jury, and therefore ought to have been left to them.

Again this instruction seems to assert, only in more general terms, the same proposition as is put more in detail in the third one, prayed by defendant's counsel, and ought therefore, to have been refused, by the court, for the same reasons, that the third instruction was refused.

5.  The third instruction prayed by the defendant's counsel, ought to have been refused upon the evidence before the jury.

In the first place, the instruction submits it to the jury to try and determine whether the college had been *legally* free from the control of the conference.    Thus it expressly submitted in so many words, a question of law, to the arbitrament of the jury.

In the second place, what constituted the control and management of the institution, was a question of law to be passed on by the court, upon the facts in evidence.    In other words it was the province of the court to tell the jury what constituted the control and management of the institutions, and it was the province of the jury to find whether the facts existed or had been proved, which were sufficient to constitute such control.    Just as it is the duty of the court to tell the jury what constitutes fraud—what are its badges.  · And of the jury to find whether these badges have been proved as matters of fact.

6.  To show that the instruction given by the court, was correct.    I remark:

*First.*  That it will be manifest from an examination of the bill of exceptions that the instruction given, was applicable to, and covered the facts of the case as developed by the evidence, and was therefore, pertinent, and in point.

*Second.*  The instruction tells the jury, as was proper to be done, what constitutes a control and management of the college by the conference.    And also what constitutes a compliance substantially with the assurance that the conference should have control of the institution.

Judge BIRCH delivered the opinion of the court.

We think, under all the circumstances of this case, that it was well enough tried in the court below. It is perceived by reference to the bill of exceptions, that the deposition of Greene was taken in a similar suit between the same parties in 1846, and that the defendant was present and cross-examined the witness. It is too late to question the reasonableness of the policy of permitting such a deposition to be read in a subsequent suit between the same parties, and the analogous authorities are scarcely less explicit respecting the admissibility of copies, properly evidenced, after proof of the loss of the original.

In this case, it was proven, firstly, that the magistrate who took the deposition in the former suit, made out and sent the plaintiffs counsel a copy—as is frequently requested for the purpose of informing them of the nature of the testimony. It was next proven that the record of that suit, including the original deposition, was lost or mislaid; and the witness, who is an intelligent lawyer, and of counsel for the plaintiffs in both suits, swears that having read both the original and the copy, he believes them to be alike. The case, therefore, from its nature, does not seem to disclose the existence of other and better evidence, and we perceive no error, in permitting the copy thus proven, to be read to the jury as proving the contents of the original.

It is deemed unnecessary to review the action of the court below in refusing to give the instructions asked for by the defendant—the one subsequently given of its motion having covered the entire case in such manner as to place its merits substantially, fully and fairly before the jury. Let the judgment, therefore, which was rendered upon their verdict, be affirmed.