26 153
37a 24
26 153
46a 293
26 153
50a 249
26 153
129 141

BIRCH, Defendant in Error, v. BENTON, Plaintiff in Error.

1. Slanderous words charging a man with having whipped his wife are not actionable *per se;* special damage must be alleged and proved.
2. Words imputing an indictable offence for which corporal punishment may be inflicted as the immediate punishment, and not as the consequence of a failure to satisfy a pecuniary penalty, are actionable in themselves.
3. Under the revised code of 1845, "to publish maliciously and falsely, in any manner whatever, that any person has been guilty of fornication and adultery," was actionable.

4. The office of an innuendo is to explain the meaning of the defendant in us-
ing the slanderous words; and this meaning as averred by an innuendo is a
question of fact to be decided by the jury.

5. The question whether there is a fatal variance between the allegations of a
petition and the proof is a question for the court.

6. In an action of slander the slanderous words must be proved as charged;
proof of equivalent words is not sufficient.

*Error to Henry Circuit Court.*

*Ryland* and *Johnson*, for plaintiff in error.

I. To say of a man that he whipped his wife is not action-
able. The first and third counts contain words making this
charge alone. Defendant's fourth instruction should have
been given.

II. The words as charged must be proved, or a sufficient
number of them to contain the charge must be proved. It is
not sufficient to prove equivalent words. The court ought to
have excluded Burns' deposition. His statement does not
contain the words as charged in the fourth count. (Dryden
v. Berry, 7 Mo. 324.) It was the duty of the court to decide
upon the subject of the variance between the words offered in
proof and the words charged. (Ib.)

III. The innuendo is no part of the words charged, and
should not have been given to the jury as such a part of the
words charged.

IV. The seventh instruction for defendant should have
been given. There is no pretence that Burns proved the
words as laid in the fourth count. Where words are charged
to have been spoken which are not actionable, but are cou-
pled with other words that are actionable, it is not sufficient
to prove the words not actionable. It is manifest that the
court below supposed it to be actionable to say of a man that
he had whipped his wife.

V. The court ought to have given the twelfth instruction
asked for by defendant. There was no mayhem proved; not
one word of evidence on this charge. The words which by
innuendo were alleged to impute adultery with the negro

woman were not proved.  A similar charge was proved, but not in the words as laid in the petition, nor in the substance of the words.

*Sheley,* for defendant in error.

I. The court committed no error in refusing to exclude from the jury the evidence of Burns, he having proved the substance of the words as laid in the petition.  (Herme v. Arrowsmith, 1 Bibb, 166 ; 2 Gilm. 720 ; Cooper v. Marlow, 3 Mo. 134 ; Estes v. Autrolus, 1 Mo. 140 ; David v. Winters, 20 Mo. 361 ; Hudson v. Garner, 22 Mo. 423.)

II. The court committed no error in permitting plaintiff to read the deposition of Phillips ; it was properly rebutting testimony to Gov. King's deposition, and even if properly evidence in chief, yet it was purely within the discretion of the court, and this court will not revise that discretion.  (Rucker v. Eddings, 7 Mo. 115.)

III. The instructions given by the court upon its own motion embraced all the law of the case, and the instructions asked by defendant were very properly refused.  (Masten v. Fanning, 19 Mo. 302.)

IV. The plaintiff had a right to read a part of the deposition of Terrill, and the court committed no error in permitting him to do so.  The defendant has no right to complain, as he afterwards read the remaining portions of the deposition to the jury.  (Hill v. Haile et al. 13 Mo. 612.)

V. The deposition of McKee was properly read to the jury.  It is competent to prove the repetition of the words after suit is brought.  (Williams v. Harrison, 3 Mo. 240.)

RICHARDSON, Judge, delivered the opinion of the court.

The amended petition on which the case was tried is as follows : " Plaintiff states that on the 16th day of July, 1849, at Clay county, in the state of Missouri, the defendant (who is not a resident of said state) spoke the following false and slanderous words concerning the plaintiff: ' I wonder when

the damned scoundrel whipped his wife last ?' meaning thereby to charge, and being understood by those who heard him to charge, that plaintiff had been and was guilty of the dishonoring crime of an assault and battery on his wife. Plaintiff further states that on the fourth day of August, 1849, at the county of Platte, in the state of Missouri, the defendant (who is not a resident of said state) spoke in the presence and hearing of divers persons the following false and slanderous words concerning the plaintiff—that is to say, ' He has whipped his wife ; he has whipped her again since he denied it at Liberty ; he knocked out three of her teeth ;' meaning thereby to charge that the plaintiff had been and was guilty of the crime of mayhem. And at the time and place aforesaid, and in the hearing of the persons aforesaid, the defendant spoke of and concerning the plaintiff these other false and slanderous words—that is to say, ' She had to fly to a neighbor's house, where she exhibited the blood or marks of his violence. He whipped his wife until the blood ran down to her heels ;' meaning thereby to charge plaintiff with the crime of assault and battery on his wife. And at the time and place aforesaid, in the hearing of divers persons, the defendant (who is not a resident of the state of Missouri) spoke the following false and slanderous words concerning the plaintiff— that is to say, ' The Platte City clique have brought Jim Birch—that cur dog—yes, that son of a cur—yes, a damned sheep-killing dog—to speak against me ; since I was at Liberty he has whipped his wife, and she had went to a neighbor's house with her teeth knocked out and with blood on her ; all for keeping his own negro wench ;' meaning thereby to charge, and being understood by those persons who heard him to charge, plaintiff with the scandalous crime of adultery with a negro woman ; by which plaintiff says he is damaged," &c.

The only evidence offered by the plaintiff for the purpose of proving the speaking of the words, was the testimony of James N. Burns and John Terrill. The material part of Mr. Burns' statement is as follows : " I was in Platte City on the

day Col. Benton made his speech, which was, I think, in the summer of 1849; saw Col. Benton after his address at Gaines' Hotel; heard him talking in the porch of the hotel about an hour that day; he was explaining or talking to the crowd about the outrage that he said had been committed there that day toward himself; and in substance used about this language: ' that the Platte City clique had caused him to be insulted at his stand in a private grove; had sent for a dog, a d—d sheep-killing dog or cur, Jim Birch, to answer his speech—a man who had whipped his wife and caused her to fly to a neighbor's house with the marks of his violence upon her; that his wife was a decent and intelligent lady, and that the cause of the difficulty was on account of Birch preferring to sleep with a d—d negro wench to his own wife.' Such is about my impression of what conversation I heard," &c. The substance of Mr. Terrill's deposition is as follows: " I was in Liberty on the day that Col. Birch and T. H. Benton spoke, in the summer of 1849. On the day that they spoke in Liberty, I was sitting opposite to Col. Benton on the pavement in front of Green's tavern; there was a large crowd present listening to Col. Benton's conversation; he very bitterly denounced Col. Birch as the man who had whipped his wife for the accommodation of a negro woman; and said that he would not speak in the court-house with him, or notice him in any manner," &c.

It will be observed that the venue of the conversation in which the plaintiff was charged with " keeping his own negro wench" was laid at Platte City, and only one of the witnesses testifies to any thing that was said at that place, and he does not undertake to give the defendant's language, but only his impression of the substance of it.

The petition contains four sets of words, and though the court subdivided it into four counts, it contains only one; but this subdivision, though technically incorrect, was a convenient mode of distinguishing the sets of words claimed to be actionable. The first and third are that the plaintiff had whipped his wife, and imputed the offence of assault and

battery; the second that the plaintiff was guilty of mayhem; and the fourth that the plaintiff kept his own negro woman, which imputed the offence of adultery. Among other instructions the defendant asked this: " 4. That the words in plaintiff's petition charging defendant with having said that plaintiff whipped his wife are not words actionable under the law; and, although they may believe from the evidence that the defendant spoke such words, the speaking of the words did not authorize the jury to find for plaintiff." The court refused to give this instruction, and gave the following: " 1. The court, on the part of the plaintiff, instructs the jury, the slanderous words alleged to have been spoken by the defendant of the plaintiff, as alleged in the first and third counts, are admitted by the defendant to have been spoken, and the defendant has not by his answer justified or set up any defence to the same, except in mitigation of the damages."

It is evident from these two instructions, the one given and the other refused, that the case was put to the jury on the idea that words are actionable of themselves, which charge a man with having whipped his wife. In this there was error, for, though there is no act which is more disgraceful or cowardly, and no offence for which a man ought more promptly to be branded with shame, yet there is no action for such slander without the allegation and proof of special damage.

The law engages not only to guard the property and personal security of individuals, but their good name and reputation; and " where a man has a temporal loss or damage by the wrong of another, he shall have an action on the case to be repaired in damages." In every case where a person suffers loss by the malicious defamation of another, he may have an action; and in many instances, as the immediate tendency of the slander is to produce injury, the law considers the speaking of words that impute particular offences as injurious; and, presuming that the person whose character is assailed is damaged, confers the right of action without requiring the allegation or proof of special loss. Such words

are called actionable of themselves; whilst for the speaking of others the party aggrieved must aver and prove special damage.

Various rules have been laid down by different courts, by which they undertake to determine what words are or are not actionable; and though the adjudged cases have not agreed on a uniform rule, they generally concur in holding that " the actionable quality of words results not from the degree of discredit attached to the party, but to the penal nature of the offence imputed." The rule in New York, which has been followed by several other states, is that words are actionable in themselves " in case the charge, if true, would subject the party charged to *an indictment* for a crime involving *moral turpitude*, or subject him to an *infamous punishment*." (Brooker v. Coffin, 5 John. 188.) This rule lacks certainty; for the terms " moral turpitude" and " infamous" are of indefinite import, and men differ as to the quality of an act according to their own standard of morality. Some persons make no distinction between that which is *malum prohibitum* and *malum in se*, and regard every violation of law as immoral. It is indictable by our statute to sell liquor without a license by the glass. Some think that the selling of liquor at all is wrong, and that a violation of this law involves " moral turpitude," whilst others think that the business is honest and harmless, and that it is only improper to sell without a license, because the law prohibits it, and not because it is wrong in itself. It has also been held that words are actionable *per se* which impute a crime or misdemeanor that will subject the party charged to an indictment. This was an intelligible rule at common law; for an offence charged to be indictable implies that the punishment might be corporal, inasmuch as the lowest grade of punishment, even for a misdemeanor, was a fine or imprisonment, or both fine and imprisonment. But our statute has so much increased the number of indictable misdemeanors which are only punishable by fine, that this rule would be impracticable here. It would hardly be insisted in this state that it is actionable to say of a merchant

that he had sold goods without a license, or that a road-over-seer had neglected to keep his road in repair.    Mr. Starkie, in his treatise on slander (1 Stark. on Sland. 43), suggests that it is actionable without proof of special damage " to impute any crime, or misdemeanor for which corporal punishment may be inflicted in a temporal court," provided the corporal punishment is the primary and immediate penalty for the offence.    This definition omits one element which seems to be essential, namely, that the offence charged must be indictable.    As the result of our examination we think the rule that is safest and most certain in its application is, that words are in themselves actionable which impute an indictable offence for which corporal punishment may be inflicted as the immediate punishment, and not as the consequence of a failure to satisfy a pecuniary penalty.    The last charge in the petition is saved from the operation of this rule by the act of 1845 (R. C. 1845, p. 100,) which declares that " it is actionable to publish maliciously and falsely, in any manner whatsoever, that any person has been guilty of fornication and adultery."

The third instruction given for the plaintiff was ambiguous and calculated to mislead the jury.    It is as follows : " The court further instructs the jury that the slanderous words charged as having been spoken by the defendant of the plaintiff in the fourth count in said petition are, ' all for keeping his own negro wench ; defendant meaning thereby to charge, and being understood by those persons who heard him to charge, plaintiff with the scandalous crime of adultery with a negro woman.'    If the jury shall find from the evidence that the words proved to have been spoken by the defendant substantially correspond with those charged in the fourth count, and that defendant by the words meant, and was understood, to charge plaintiff with adultery with a negro woman, they must find a verdict for plaintiff upon that count."    The office of an innuendo is only to explain the defendant's meaning, and the meaning as averred by an innuendo is a question of

fact to be decided by the jury. This instruction in effect told the jury that the innuendo was true.

It was objected on the trial, and the objection has been urged in this court, that there is a fatal variance between the allegations in the petition and the proof. This was a question exclusively for the court. (7 Mo. 324.)

Different courts have been more or less rigid in the application of the rules of law bearing on questions of variance in suits for slander, but this court has laid down an explicit rule, from which it has never departed, to our knowledge, and we see no reason why we should now. In Berry v. Dryden, 7 Mo. 334, when two of the present members of this court were on the bench, the opinion delivered by Judge Scott stated the law on this subject as follows: " The rule is stated in the books that the slander proved must substantially correspond with that charged in the declaration. By this it is not to be understood, that if certain words are employed to convey a slanderous imputation, these words will support a declaration containing the same imputation in different words. The meaning of the rule seems to be, that if the words charged to have been spoken are proved, but with the omission or addition of others not at all varying or affecting their sense, the variance will not be regarded. Although the words proved are equivalent to the words charged in the declaration, yet not being the same in substance an action can not be maintained; and, although the same idea is conveyed in the words charged and those proved, yet, if they are not substantially the same words, though they contain the same charge but in different phraseology, the plaintiff is not entitled to recover." The authorities fully sustain this decision. It has long been settled that the declaration must profess to set out the very words, and that it is not sufficient to describe them by their sense, substance and effect (1 Stark. 362) ; and though it is not necessary to prove all the words, some of them must be proved as laid (ib. 369) ; and if all the words as laid constituted but one charge, the whole must be proved. (Ib. 374.)

The rule as stated in 2 Phil. Ev. 97, is adopted and approved in Fox v. Vanderbeek, 5 Cow. 515: "The words which are proved must be proved as laid, and it will not be sufficient to prove equivalent words of slander. Words to the same effect are not the same words; and the plaintiff need not prove all the words on the record, yet he must prove so much of them as will be sufficient to sustain his cause of action." It was also recognized afterwards in Olmstead v. Miller, 1 Wend. 506, and the opinion of the court is properly stated in the syllabus: "In slander, though the words proved are equivalent to the words charged in the declaration, yet, not being the same in substance, an action can not be maintained; and though the same idea is conveyed in the words charged and those proved, yet if they are not substantially the same words, though they contain substantially the same charge, but in different phraseology, the plaintiff is not entitled to recover." "The circumstance that the words proved have the same meaning with those laid is not sufficient; all the words laid need not be proved, but so many of them must be proved as will support the action." (Creelman v. Marks, 7 Blackf. 281.) "That all of any given set of words need not necessarily be proved, but so many only of the *identical* words charged in such set as are necessary to constitute of themselves the slanderous accusation." (Iseley v. Lovejoy, 8 Blackf. 462.) In Williams v. Bryant, 4 Ala. 44, the words charged in the declaration were that the plaintiff's wife was a " whore," and the proof was that the defendant said she was a " strumpet." Both the words charged and those spoken imputed a want of chastity, and are of equivalent import, but the variance was held to be fatal, and the court decided that it was not sufficient to prove equivalent words of slander; that the words must be proved, or at least so much of the charge as would constitute the slander, and that it was not sufficient to prove words of equivalent slanderous import. And subsequently in Easeley v. Moss, 9 Ala. 267, it was said that words precisely equivalent in meaning would not sustain a declaration in which the words charged to have been spo-

ken meant the same thing. In a conversation in which a person is slandered, a great deal may be said which does not vary the meaning of the offensive words, and therefore a variance between the declaration and proof as to the part of a statement which does not affect the sense will be immaterial; but the words that contain the poison to the character and impute the crime must be proved as laid; and this seems to be what is meant by the cases when they say that the words proved must substantially correspond with those charged. The application of this rule, so long settled and so well defined, to this case, shows, without comment, that there was a variance between the petition and the proof, and the defendant's objection ought to have been sustained.

Judge Scott concurring, the judgment will be reversed and the cause remanded.

Judge Napton gives no opinion.