## FLORENCE JENNIE JONES, Respondent, v. JOHN C. BANNER, Appellant.

### Kansas City Court of Appeals, May 5, 1913.

1. **SLANDER: Actionable Words.** In slander oral words tending to disgrace a person, and not imputing a crime, are not actionable without proof of special damages, except where they charge fornication or adultery, which exception is created by Sec. 5424, R. S. Mo. 1909.

2. ————: ————. Where the reputation of a young woman for chastity, and truthfulness was indirectly under discussion, and one said of her: "I saw her drinking beer with two men about midnight one night. You see what a low, nasty character she has. I was looking through a window at the time I saw her." The words are actionable without proof of special damages. While the mere fact of drinking beer with men would not impute unchastity, yet when the speaker describes her character, not her conduct, as "low and nasty" this does do so. There can be but one meaning to the terms "low nasty character" when applied to a woman.

3. ————: ————: **Meaning.** Words are to be taken in the sense which is most obvious and natural and according to ideas they are calculated to convey to those to whom they are addressed. Courts should understand them as other people would.

4. ————: ————: ————: **Opinion of Witnesses Who Heard Them.** Where words on their face are susceptible of more than one meaning, or where they are innocent of themselves but derive an offensive meaning because of certain conditions or circumstances under which they were uttered, then the opinions of witnesses who heard them as to what they understood them to mean are admissible.

5. ————: **Pleading: Allegation of Intention on Part of Defendant.** While it is necessary to allege, in a petition charging the speaking of words not slanderous *per se*, that the defendant spoke them "intending to charge, etc.," yet where no objection to the petition was made, a petition omitting such allegation is good after verdict.

6. ————: **Instructions.** And in such case it is not error to omit from plaintiff's instructions the intention defendant had in saying the words, nor to refuse defendant's instruction requiring the jury to find that defendant intended to charge fornication before returning a verdict for plaintiff where the defendant on cross-examination admitted that such was his intention.

Appeal from Putnam Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

AFFIRMED.

*E. M. Harber, J. W. Clapp* and *D. M. Wilson* for appellant.

(1) Words not in themselves actionable cannot be rendered so by an innuendo without a prefatory averment of extrinsic facts which makes them slanderous. Townsend on Sl. & Lib. (4 Ed.) 566; Church v. Bridgman, 6 Mo. 196; McManus v. Jackson, 28 Mo. 56; Powell v. Crawford, 107 Mo. 595; Cook v. Pulitzer Pub. Co., 241 Mo. 326. (2) An innuendo may not introduce new matter or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. It cannot alter or extend the sense of the words. 13 Am. & Eng. Ency. of Law (1 Ed.), 465; Ukman v. Daily Record Co., 189 Mo. 378; Legg v. Dunleavey, 80 Mo. 558. (3) The demurrer to the evidence should have been sustained and the jury instructed to find for the defendant. Odgers on Lib. & Sl. (2 Ed.), 94 *et seq.*; Newell on Sl. & Lib. (2 Ed.), 290, sec. 4; Ukman v. Daily Record Co., supra; King v. Hartwig, 151 Mo. App. 92; Van Loon v. Van Loon, 159 Mo. App. 255. (4) The words alleged to have been spoken are not ambiguous, and have a clear, popular meaning, and a witness who heard the words cannot testify to what he understood them to mean. Callahan v. Ingram, 122 Mo. 355; Julian v. Star Co., 209 Mo. 35; Branch v. Knapp & Co., 222 Mo. 580. (5) The court erred in declaring the law in instructions 4, 5, 8 and 9 given for plaintiff, and in refusing to give defendant's instruction "A." Sec. 5424, R. S. 1909; Pollard v. Lyon, 91 U. S. 225; Lehman v. Medack, 152 S. W. 438.

*Smoot & Cooley* and *J. W. Magee* for respondent.

(1) The petition states a good cause of action for slander and plaintiff did not demur thereto, and under the evidence the case was properly submitted to the jury. Van Loon v. Van Loon, 159 Mo. App. 255; Julian v. Kansas City Star Co., 209 Mo. 35; Lewis v. Humphreys, 64 Mo. App. 466; Walker v. Hoeffner, 54 Mo. App. 554. (2) All the facts and circumstances surrounding the utterance of the words charged may properly be proved and taken into consideration in determining what was meant and understood to be meant; and where the words themselves might be susceptible of different meaning, witnesses may properly be permitted to testify to what they understood the words to mean. Wagner v. Printing Co., 45 Mo. App. 13; Morris v. Sailer, 154 Mo. App. 305; McGinnis v. Knapp & Co., 109 Mo. 131.

TRIMBLE, J.—Respondent, a young woman twenty-five years of age, sued appellant on a petition in four counts, the first of which alleged indecent, lascivious assault, the second and third charged libel, and the fourth slander.

At the close of plaintiff's evidence she dismissed the second and third counts charging libel. And at the close of all the evidence a demurrer to the fourth count was overruled and the case submitted to the jury on the first and fourth counts charging assaults and slander respectively. The jury found for appellant on the assault charge, but returned a verdict against him on the slander count assessing compensatory damages at $500 and punitive damages at $250. After an unsuccessful motion for new trial, he has brought the case here on appeal.

The circumstances under which the alleged slanderous words are charged to have been spoken are these:

Appellant was a loan agent in Unionville, having his office up stairs directly over the front part of the postoffice on the south side of the public square. In January, 1910, a man named Mills raised a difficulty in appellant's office, choked a young lady therein, got into a personal encounter with appellant and finally drew a pistol and fired, the ball going through the floor into the post office below. Appellant applied to J. W. Magee, then prosecuting attorney of Putnam county, to prosecute Mills, but Magee refused to do so. This raised a controversy between Magee, the prosecutor, and appellant which finally resulted in Magee publishing an article in one of the Unionville papers, in defense of his action in refusing to prosecute Mills, to the effect that Mills was not guilty.

On February 14, 1910, Magee, having secured two unsigned letters alleged to have been written by appellant to plaintiff, filed an information against appellant charging him with blackmail, that is, with attempting to extort money from plaintiff by means of threats made in said letters. (These letters were the same used as a basis for the charges of libel contained in the second and third counts which were dismissed as hereinabove stated.) Appellant was never brought to trial on this information; the case, after continuances for several terms, being finally abandoned and dismissed. Shortly after this information was filed, however, and while it was pending, Magee became a candidate for renomination as prosecuting attorney at the August primary. Appellant, belonging to the same political party as Magee, vigorously opposed the latter's candidacy, giving as his reason Magee's refusal to prosecute Mills who had raised a disturbance in appellant's office. Meetings were held at different places over the county and at some of these meetings both Magee and appellant were present and spoke to the voters. At one of these meetings, held about the middle of June at St. Johns, a small town in the west

part of the county, Magee in his speech to the voters referred to appellant's opposition to his candidacy and mentioned the information for blackmail he had filed against appellant, and prophesied that he would send appellant to the penitentiary. Appellant Banner spoke in reply, and it is in this speech he is alleged to have used the words set out in the fourth count. They are as follows:

"I saw her drinking beer with two men about midnight one night. You see what kind of a low, nasty character she has. I was looking through a window at the time I saw her."

The colloquium set out that the two letters above referred to were written and published by defendant; that prior to the speaking of the words, an informa-. tion had been filed charging defendant with an attempt to extort money from plaintiff by means of the threats contained in the letters, and that the words were spoken while the criminal charge was pending, and while the fact of the filing of the information and the reputation of the plaintiff for virtue and chastity were being discussed. There was also an innuendo averring that by the words spoken the defendant meant to charge the plaintiff with being guilty of fornication and illicit sexual commerce with men, and with being a woman of bad reputation for virtue and chastity.

The suit was brought November 2, 1910, by respondent through her attorney, Magee, who was defeated for renomination in the primary.

The answer to the fourth count denied that the defendant spoke the words' or the substance of the words charged, and alleged that what he did say was this: "I saw her in a building through a window with a couple of young men drinking out of a bottle, and. you can see or judge what kind of a character a young lady has who would do that."

The answer further alleged that the defendant was a voter of Putnam county at the primary at which Magee was a candidate for renomination, and was opposing his candidacy; that Magee, in order to ren-der defendant's opposition to him futile, stated at the St. Johns' political meeting that he had filed a crimi-nal charge against defendant for attempted black-mail of the plaintiff and would send defendant to the penitentiary; that defendant being called upon by vot-ers to reply spoke the words last above set out.

No special damages were pleaded or proved. In slander the rule is not the same as in libel. The rule in slander is that oral words tending to disgrace a person, and not imputing a crime, are not actionable without proof of special damages. [18 Am. & Eng. Ency. of Law (2 Ed.), pp. 863, and 906; Nelson v. Musgrave, 10 Mo. 648; Bundy v. Hart, 46 Mo. 460, l. c. 462; Birch v. Benton, 26 Mo. 153, l. c. 160.] This rule has been modified in our State by section 5424, Re-vised Statutes 1909, making it actionable to publish falsely and maliciously, in any manner whatsoever, that any person has been guilty of fornication or adul-tery. So that in this case, as special damages are not pleaded nor proved, the words charged are not ac-tionable unless they can be said to contain a charge of unchastity against plaintiff.

Are the words alleged to have been uttered capa-ble of being interpreted as containing such a charge? Appellant urges that they are not. However, repre-hensible the drinking of beer may appear to many persons, and however blameworthy such an act on the part of a young lady in the presence of young men may in fact be, yet we cannot shut our eyes to the fact that many women will drink a glass of beer in the presence of and with members of the opposite sex, and yet no thought of unchastity will occur or arise there-from. Undoubtedly it is not a praiseworthy custom and is a dangerous practice tending to lead young per-

sons into habits of intemperance to the marring of
their lives and the blasting of many fond hopes bound
up in them. But such act does not necessarily imply
that one who is seen to take a glass of .beer, even at
midnight and in company with men, is guilty of hav-
ing sexual intercourse with them. And if drinking ·
beer with men at night were all that was said, it
would readily appear that the words were not and
could not be made actionable. But the trouble is, this
is not all that was said. Defendant himself broadened
the effect of this charge by using the words ''low,
nasty character.'' In determining whether words are
actionable or not they are now construed by courts in
the plain popular sense in which the rest of the world
naturally understand them. [McGinnis v. Knapp &·
Co., 109 Mo. 131, l. c. 140.] ''Words are to be taken
in the sense which is most obvious and natural and
according to ideas they are calculated to convey to
those to whom they are addressed. The principle of
common sense which now governs in the construction
of words requires that court shall understand them
as other people would. The question always is, how
would ordinary men naturally understand the lan-
guage?'' [18 Am. & Eng. Ency. of Law (2 Ed.), 974;
Vanloon v. Vanloon, 159 Mo. App. 255.] Applying
this rule, what is meant and understood by every one
when it is said of a *woman* ''she has a low, nasty
character?'' The Standard Dictionary defines ''nasty''
when applied merely to *speech or conduct* as being
''morally filthy; obscene; indecent.'' Is it not much
more definite in its meaning when used to describe the
*character* one has, especially a woman? Appellant
contends that the words ''low, nasty'' do not import
unchastity because the words used show that these
terms are based solely on the act of drinking beer with
men. That is, that which defendant really said was
''drinking beer makes her low and nasty,'' or that
''she is low and nasty in that she drank beer with

men,'' and hence the words do not import unchastity.
But the terms ''low, nasty'' were not used to de-
scribe her conduct in drinking beer but to specify her
*''character.''* ''It is not necessary that the words
should amount to a directly affirmative charge of for-
nication, adultery or unchastity; it is sufficient if the
words were calculated to induce the hearers to sup-
pose and understand that the person against whom
they were uttered was guilty of unchastity.'' [25
Cyc. 319; Vanloon v. Vanloon, 159 Mo. App. 255, 1. c.
267.] We are unwilling to hold that such charges
made against a woman falsely cannot be stated under
such circumstances as to render them actionable, and
hence there was no error in overruling appellant's de-
murrer to the evidence.

Appellant, on the theory that the words used are
not actionable *per se,* contends that, before plaintiff
was entitled to recover, it was necessary for her to
allege and prove that defendant spoke said words in-
tending to charge plaintiff with being unchaste and
guilty of fornication; and that plaintiff's instructions
were erroneous in that they omitted to require the
jury to find that he used them with that intent. Also
that the court erroneously refused appellant's instruc-
tion ''A'' which told the jury that, if the words were
spoken not intending to charge plaintiff with fornica-
tion or illicit sexual commerce with men, there could
be no recovery. Even on this theory, so far as the pe-
tition is concerned, there was no demurrer filed to it
or objection made to it on any ground. It is therefore
good after verdict.

As to plaintiff's instructions omitting the element
of defendant's intention to charge unchastity or forni-
cation, and the refusal of defendant's instruction
''A,'' the complaint would be good were it not for the
fact that defendant in his testimony *admitted that
such was his intention.* In such case there was no
need for the jury to be told that they must find defend-

ant used the words in the actionable sense charged. Nor was it error to refuse defendant's instruction "A" authorizing them to find for defendant if they found the words were used by him not intending to charge fornication, *since it was contrary to his own admission.* On cross-examination he was asked:

"Q. But as a matter of fact you meant that she was not a woman of virtue and therefore you ought not to be prosecuted for writing these letters, didn't you? A. How was that? Q. You meant to charge she was not a woman of virtue, and you ought not to be charged with it? A. Meant to charge she was not a woman of virtue? Q. Yes, sir? A. *Possibly I did.*"

Objection is also made that the court permitted certain witnesses for plaintiff to testify that they understood the words used to mean that plaintiff was an unchaste woman guilty of fornication or illicit sexual intercourse with men. This testimony was given before defendant admitted on the stand that he intended to make that charge. Defendant was asserting that the words did not impute unchastity at all. Plaintiff was trying her case on the theory that *under the circumstances in which they were uttered,* and in the sense in which they were used, they did impute such offense. Up to the time these witnesses testified, and indeed afterward, defendant urged that the charge was merely that the plaintiff drank beer with men at night and could not impute unchastity. Where words on their face are susceptible of more than one meaning or where they are innocent in themselves but derive an offensive meaning because of certain conditions or circumstances under which they were uttered, then the particular meaning becomes a question of fact for the jury. And the best proof of what meaning was actually conveyed is the testimony of witnesses, who heard the words uttered, as to what they understood them to mean. [Julian v. Kansas City Star, 209 Mo. 35, l. c. 79.] Where the language may or may not impute the

crime which is charged to have been imputed, such testimony is proper. [Townshend on Slander, sec. 140; Nelson v. Borchenius, 52 Ill. 236; Wagner v. Printing Co., 45 Mo. App. 6, l. c. 13.] In addition to this, as stated above, defendant afterward went upon the stand and admitted that such was the meaning he intended to convey. In view of this, even if it were otherwise doubtful as to such evidence being admissible, it is difficult to see how such testimony could be so hurtful as to constitute reversible error.

The questions of whether the words charged were uttered or not and whether they were false, were submitted to the jury and they decided them for plaintiff. If defendant uttered them and they were false and he intended to charge plaintiff with unchastity, as he admitted he did, then legal malice follows. We have examined the case carefully and are without excuse for disturbing the verdict.

Hence judgment affirmed. All concur.