JENNIE CRANDALL, Defendant in Error, v. ROBERT H. GREEVES, Plaintiff in Error.

Kansas City Court of Appeals, May 26, 1914.

1. **LIBEL AND SLANDER: Words Slanderous Per Se.** The following words, "I can prove that Jennie Crandall has gone over to El Crawford's and has staid days and nights with El Crawford alone when no one was there. She has no character or as to character she has none," said of a woman, are plain and unambiguous. They accuse her of staying alone with a man day and night and announce, as a conclusion from such conduct, that she has no character. Such a charge against a woman can mean but one thing—an accusation of unchastity against her. Such a charge, made falsely and maliciously in any manner is slanderous *per se* under Sec. 5424, R. S. Mo. 1909. The terms do not have to use the words "fornication" or "adultery." If their plain and unmistakable meaning is that the person against whom they are uttered is guilty of unchastity, they are slanderous.

2. ———: ———: **Innuendo; Evidence as to Meaning.** Where the language is unambiguous and slanderous *per se* an innuendo is unnecessary. But, in such case if one is used, it may be

disregarded. And while evidence as to what the hearers understood by such plain and unambiguous language is unnecessary, yet, since the meaning which the hearer said he attributed to the words is the meaning which the law says shall be given them, the admission of such evidence was not reversible error.

3. ———: ———: **Evidence as to Changed Relations.** Evidence of changed relations of people toward the one slandered is not admissible except where special damages are pleaded as a loss of trade or professional earnings following the publication.

4. ———: ———: **Proof of Words Charged.** A slander is not sustained by proof of different words from those charged in the petition although they mean the same thing, but enough of the same words must be proved to make out the charge.

5. **EVIDENCE:** Supplying Lost Deposition: Stenographer's Notes. Where the deposition of a witness has been properly taken and regularly filed in court as a record in the cause, and the deposition is lost, and the witness is dead, it is not error to permit the stenographer to read to the jury a transcript of her notes of the witnesses deposition, she having taken the same in shorthand when the deposition was given and having testified that they are correct and correctly set forth what the witness swore to. In such case the court is not making something a deposition which was not a deposition but is merely supplying the contents of a lost record, which can be done, so long as the best evidence rule is observed.

6. **TRIAL PRACTICE:** Cross-Examination of Witness to Reputation: Specific Acts. While a witness who has testified to a party's bad general reputation may be asked if he has seen the person inquired about do any specific act, for the purpose of ascertaining the basis of his opinion that the reputation is bad, yet where the witness has shown clearly that his opinion is based not on what he himself knows of the individual but on what the people generally say, it is improper cross-examination to repeatedly ask the witness in varying ways and different forms, if he knows personally of any specific act on the part of the individual in question. The issue in reputation evidence is not whether the witnesses themselves know of any specific acts to which they could testify, but what is the general estimate in which the person is held by the people of the neighborhood, and the inevitable effect of allowing questions as to specific acts to be asked over and over again is to unfairly avoid that issue, and to render evidence of bad reputation of no value in the minds of the jury merely because the witnesses cannot testify to any specific acts.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED AND REMANDED.

*Jack Brisco,* and *Whitecotton & Wight* for plaintiff in error.

*Ben Hulse, Hays & Heather* and *James P. Boyd* for defendant in error.

TRIMBLE, J.—Jennie Crandall sued Robert R. Greeves for slander in the utterance of the following words: "I can prove that Jennie Crandall has gone over to El Crawford's and has staid days and nights with El Crawford alone when no one was there. She has no character, or as to character she has none." The petition contained an innuendo to the effect that said Greeves by said words intended to and did charge her with lewd, immoral and unchaste conduct and relations with said El Crawford, and that said words were so understood by the hearers.

The answer was a general denial coupled with a specific denial of the precise words charged. It was also alleged that whatever words were spoken were uttered in good faith and without actual malice, and did not cause any damage to complainant's good name for the reason that her reputation for chastity and virtue was bad.

After a trial and disagreement of the jury in Ralls county, a change of venue was taken to Randolph county where a second trial resulted in a verdict in Mrs. Crandall's favor for $500 actual and $1000 punitive damages. A motion for new trial was filed and at the hearing thereof the trial court intimated that the punitive damages were excessive and a remittitur of $500 of the punitive damages was entered. Whereupon the court overruled the motion for new trial and rendered

judgment for $1000 being the aggregate of the actual and punitive damages. The case comes here by writ of error.

The words are plain and unambiguous, and when falsely and maliciously uttered are slanderous *per se*. They are capable of but one meaning. They accuse a woman of going to a man's house and staying with him days and nights alone when no one was there, and announce, as a conclusion from such conduct, that she has no character. This can mean but one thing—an accusation of unchastity against the woman. Such a charge, made falsely and maliciously in any manner whatsoever, is slanderous *per se* under section 5424, Revised Statutes 1909. The charge does not have to be made in the bald and unvarnished terms of fornication or adultery. If the words used are sufficient to carry the plain and unmistakable meaning that the person against whom they are uttered is guilty of unchastity, they are slanderous. [25 Cyc. 319; Vanloon v. Vanloon, 159 Mo. App. 255; Jones v. Banner, 172 Mo. App. l. c. 139.]

It was, therefore, unnecessary to offer the testimony of the witness Utterback to show that he understood the language as charging the woman with unchastity. But, while this evidence was unnecessary, it does not follow that its admission constitutes reversible error. Since the words themselves, as matter of law, charge unchastity, the evidence that the witness so understood them could not affect the issue nor prejudice the jury. Where the language is unambiguous and the words are actionable *per se,* an innuendo is unnecessary, and, if one is used limiting the meaning of the words, it may be disregarded. [Callahan v. Ingram, 122 Mo. 355; Michael v. Matheis, 77 Mo. App. 556.] The evidence of the witness Utterback that he understood the words to charge unchastity was no more than the construction placed upon them by the law, and was, therefore, the construction the jury was

required to place on them. Hence such evidence, while unnecessary, could have had no vitiating effect upon the trial. [Brown v. Wintsch, 110 Mo. App. 264.]

Complaint is made because the witness Settle was allowed to state that he had heard nothing in the neighborhood derogatory to Mrs. Crandall's character prior to his hearing Greeves utter his charge against her. The error, if there be any, cannot be effective to invalidate the judgment. Another witness had so testified without objection. [Lindsay v. Kansas City, 195 Mo. l. c. 181.] Again, the objection made to this part of Settle's testimony was only that it was "immaterial." The objection was therefore no objection, not being specific enough. [Stevens v. Knights of Modern Maccabees, 153 Mo. App. 198; Fuller v. Robinson, 230 Mo. l. c. 56.] While it was perhaps not technically proper at the time it was given, yet the evidence was not absolutely and wholly immaterial. Bad reputation had been set up in the answer. The witness Settle had known Mrs. Crandall in that neighborhood for fifteen years. That he had never heard anything derogatory to her character prior to the slander was, therefore, not wholly immaterial since it bore on her reputation.

It is contended that the trial court erred in permitting the notes of the stenographer, who took the deposition of William Shoemyer, to be read to the jury as his testimony. Shoemyer, at the time of the trial, was dead and his deposition was lost. Proof was first made that prior to the change of venue, and while the case was still pending in the Ralls circuit court, Shoemyer's deposition was regularly and duly taken in the proper manner and form before a notary public and by him transmitted in the usual way to the clerk of that court, who filed it as a record in the case; that after that, in some way it was lost; that Shoemyer was dead; that at the taking of his deposition both sides appeared and the witness was examined; that his testimony was taken in shorthand by Miss Vallie Utterback, official

court reporter for Monroe county, who saw and heard the witness sworn and heard him testify and who took down in shorthand the questions and answers as they were asked and given, who made a transcript therefrom in long hand, which Shoemyer signed. Miss Utterback was sworn as a witness and testified that she had her shorthand notes of Shoemyer's testimony given at such deposition; that they were correct and that she had made a transcript into longhand of such testimony from said shorthand notes and she produced in court both her shorthand notes and the transcript thereof and testified that they correctly set forth Shoemyer's testimony given at the taking of his deposition. It will be noticed that the testimony had fully ripened into a deposition in regular and proper form and had become a record in the case; that it had thereafter been lost and its absence fully accounted for. The court was not, therefore, making something a deposition which had never been preserved as such. On the contrary, the deposition had come into existence and was a record in the case but was lost. The court was, therefore, merely supplying the contents of a lost record. This can be done provided the best evidence rule is observed. [Baker v. Railroad, 122 Mo. 533.] The stenographer's notes were the best evidence of the contents of the deposition. [Bradley v. Spickardsville, 90 Mo. App. 416; Showen, Admr. v. Metropolitan Street Railway, 164 Mo. App. l. c. 50.] A certified copy of a deposition is admissible on proof of the loss of the original. [Finney v. St. Charles College, 13 Mo. 266.] If at the time of making a transcript of the testimony the first time, the stenographer had made a copy thereof, such a copy proven to be correct by the stenographer's testimony, would have been admissible. It would seem that the stenographer's notes occupy as high, if not higher, position than such a copy, since they are the original source from whence both the deposition and the copy came. The deposition having once come into

existence as a deposition and having been lost and the witness being dead, the contents of the deposition could be proved like any other lost paper. [Aulger v. Smith, 34 Ill. 534.]

Over the objection of the plaintiff in error, Mrs. Crandall was asked as to the changed relations of the people toward her. Evidence of this character is not admissible except only for the purpose of showing a loss of business or professional earnings following the publication of a slander or libel. And when offered for this purpose there must be some testimony from which it appears, or from which it can be reasonably and naturally inferred that the changed relations were caused by the slander or libel complained of. If this is absent, the admission of such evidence is erroneous and highly prejudicial. [Kiersting v. White, 107 Mo. App. 265, l. c. 282, 287.] Most of the evidence as to changed relations, referred to a change having taken place in January while the alleged slander was uttered February 20. The prior changed relations could not have resulted from a subsequent slander. The only proof of the slander *as charged* was made by the witness Robert L. Utterback who testified to the words charged in the petition having been uttered at a funeral on February 20, 1910. A slander is not sustained by proof of different words even though they mean the same thing, but enough of the same words must be proved to make out the charge. [Parsons v. Henry, 177 Mo. App. 329, l. c. 333, 164 S. W. 241, l. c. 243.] Consequently, evidence of changed relations prior to this time should not have been admitted even if the case were such as would have made them otherwise admissible. It is not clear from the record whether some of the changed relations referred to were observed after the time of the alleged slander or not, but if they were, there was no showing that the persons manifesting such change had heard the slander and were actuated by it. Under

181 App. 16

these circumstances the evidence was not admissible for any purpose, and it was mere speculation to permit it to go in to support the inference that the changed relations were caused by the slander. Not only would the jury have nothing but conjecture upon which to base the inference that the slander charged caused the change, but there was something else shown in evidence, which happened on February 21st, which may have accounted for the changed relations rather than the alleged slander. On that day Mrs. Crandall went to the school house in company with another woman and participated in an assault upon a young lady school teacher for which the two women were prosecuted and fined. So that the testimony was in no event admissible and was speculative. The objection thereto was well founded and should have been sustained. If the objection gives one good reason why it should be sustained that is sufficient even though it fails to give other reasons which would also be valid.

A number of witnesses testified to the bad reputation of Mrs. Crandall. On cross-examination they were repeatedly asked if they ever saw her commit an immoral act. This was objected to, and the objection overruled. An examination of the record shows that these questions were not asked merely to test the soundness or the basis of the witness' opinion as to the bad reputation, but were asked over and over of each witness in such way as to necessarily avoid the issue raised by the testimony of such witnesses. That issue was not whether the witnesses themselves knew of any specific acts to which they could testify, but what was the general estimate in which Mrs. Crandall was held by the people of the neighborhood. The inevitable effect of such cross-examination was to avoid that issue and render the evidence of bad reputation of no value in the minds of the jury merely because the witnesses could not testify to any specific acts of immorality. That this result was attained is shown in the fact that

during a recess in court one of the jurors is shown
to have remarked 'They can't prove a thing against
her.' We do not wish to be understood as laying down
the rule that such a question propounded in cross-ex-
amination to a witness to test the soundness of his
opinion as to reputation or to ascertain upon what he
bases that opinion would be error. We do not wish
to hamper the cross-examination of a witness in any
such manner. But where the witness has clearly shown
that his opinion is not based on what he knows person-
ally of the individual about whose reputation he is
testifying, but that his opinion is founded simply on
what the people generally say of such individual, it is
meeting the issue unfairly and will inevitably confuse
the jury as to the value of such testimony to allow such
witness to be repeatedly asked in varying ways and
different forms if he knows personally of any specific
act on the part of the individual in question. [Moul-
ton v. Alabama, 6 L. R. A. 301.] The one offering
testimony as to reputation is not allowed to give evi-
dence of specific acts either for or against the char-
acter involved. And to allow such questions to be
propounded, even on cross-examination, when they are
of such number and character as to clearly show that
they are not asked for the purpose of testing the sound-
ness of the witness' opinion, but to destroy, unfairly,
the weight and value of the testimony given concern-
ing such reputation by creating in the minds of the jury
that it is worthless because no knowledge of specific
acts is shown, is to deprive a litigant of the value of
such testimony. It will also enable a cross-examiner
to do negatively what cannot be done affirmatively,
namely, obtain the benefit of negative evidence as to
specific acts upon an issue where the only testimony
admissible on either side is general reputation. [Teese
v. Huntington, 23 How. (U. S.) 2, l. c. 13; Common-
wealth v. Obain, 119 Mass. l. c. 345.] The objection
made to this method of cross-examination was too gen-

eral, however, to properly raise the point, and we do not reverse the case upon this ground. It is adverted to as objectionable because, as the case must be remanded for another trial for the error heretofore noted, it will be well to avoid such method since the objection might then be specific enough to preserve the point.

There are other errors complained of but it is unnecessary to notice them since they can be avoided upon a retrial of the case. For the error in the admission of the testimony as to changed relations above mentioned the case is reversed and remanded for a new trial. The other judges concur.