MAYBELLE KIRK, Appellant, v. WILLIAM EBENHOCH and ADOLPH EBENHOCH.—No. 39530.—191 S. W. (2d) 643.

Division One, December 3, 1945.

Rehearing Denied, January 7, 1946.

*Harry C. Avery* and *John E. Corvey* for appellant.

*Albert E. Hausman* for respondents.

▮ BRADLEY, C.—Action to recover $15,000 for alleged slander; demurrer to the second amended petition was sustained, cause dismissed, and plaintiff appealed.

Plaintiff's original petition was filed May 8, 1943. A motion to strike a part of this petition was sustained on May 9, 1944. June 10, 1944, plaintiff filed a "first amended petition." June 14, 1944, a motion was filed to strike such petition. June 16, 1944, defendants withdrew the motion to strike and filed a demurrer instead. June 30, 1944, the demurrer was sustained and on July 24, 1944, a second amended petition was filed. Demurrer was again filed and sustained. The second amended petition is the one here.

It is alleged in the petition here that in 1943, plaintiff, her husband, her stepdaughter, and the stepdaughter's family resided in defendants' house in St. Louis; that the Hensons, husband and wife, also resided in plaintiff's home, and that Mrs. Henson's hair was red and that defendants, in the alleged slander, referred to Mrs. Henson as the redhead. It is further alleged "that on ▮ or about April 8, 1943, the defendants came to the aforesaid home of plaintiff and while in plaintiff's home and in the presence of plaintiff, her husband and stepdaughter, falsely and maliciously spoke and published of and concerning plaintiff certain false, defamatory and slanderous words charging that plaintiff was guilty of adultery as follows: 'These women and the redhead have soldiers running in and out day and night. We are not going to have that going on in our house.'

"That plaintiff's husband, upon hearing said words spoken by defendants, immediately demanded of and asked defendants if by such words they intended to mean, and did mean, his wife, plaintiff herein, and his daughter were running a whore house. Whereupon defendants replied, 'That is what the neighbors tell us.'

"Plaintiff further states that since herself, her stepdaughter, and the redheaded Mrs. Henson were the only women occupying, or who had occupied the premises at the time referred to by defendants, all of which was well known to defendants, that defendants intended to mean, and did mean, by the aforesaid words, language and remarks and were so understood by those who heard the said remarks, that plaintiff was guilty of adultery and was having immoral relations with soldiers, who, defendants asserted, were running in and out of the home of plaintiff day and night.

"Plaintiff further states that by the language hereinafter referred to, and spoken by defendants, in connection with the fact only the three women, including plaintiff, were occupying, or had occupied the said home, all of which was well known to defendants, by use of

the following language on or about April 23, 1943, defendants intended to mean, and did mean plaintiff was guilty of adultery and was having immoral relations with men, and were so understood by those present who heard said words spoken by defendants, said language so spoken by defendants being as follows, to wit: 'We did not accuse your daughter of running a whore house, but only your wife and the redhead.'

"That said words so uttered by defendants, on or about April 23, 1943, were uttered and published in plaintiff's home, aforesaid, in the presence of plaintiff's husband."

It appears in a memorandum filed by the trial judge who ruled the present petition that it is "substantially the same in its allegations", as the first amended petition to which his predecessor sustained a demurrer, and the memorandum says that "it therefore follows that the demurrer to the second amended petition must be and is hereby sustained." Judge Koerner, who ruled the first amended petition, also filed a memorandum and as we understand, sustained the demurrer to that petition on the theory that defendants, by the alleged slanderous words, only charged plaintiff with "running a whore house."

If such is all that is imputed by the words used by defendants, then the demurrer was properly sustained because such offense is punishable only by a fine. See Sec. 4681, R. S. 1939. With the exception of defamatory words touching one's fitness for or integrity in office or which prejudice one in his trade, profession or business, spoken words are actionable without proof of special damages only when they falsely impute (1) the commission of a crime punishable by imprisonment; (2) or falsely impute a loathsome, contagious disease such as would tend to exclude one from society; (3) or falsely impute unchastity. Boyce v. Wheeler et al., 197 Mo. App. 295, 195 S. W. 84, l. c. 87; Tincher v. National Life & Acc. Ins. Co., 235 Mo. App. 663, 146 S. W. (2d) 663. And it is not necessary that any particular words be used to denote the crime, the contagious disease or unchastity. Hauser v. Steigers, 137 Mo. App. 560, 119 S. W. 52; Boyce v. Wheeler et al., supra. We might here make reference to Nicholson v. Rogers, 129 Mo. 136, 31 S. W. 260. In that case the words were, "He is keeping a' whore house", and there was no special damage shown. It was held that such words were actionable per se. Such ruling, however, is out of line as the keeping of a bawdy house, as appears, supra, is punishable by fine only, and such was the punishment in 1895, at the time of the Nicholson case. See Sec. 3811, R. S. 1889. The point apparently was not raised in the Nicholson case. At least, it is not mentioned in the opinion. See also, Birch v. Benton, 26 Mo. 153; McKim v. Moore, 291 Mo. 697, l. c. 703, 237 S. W. 773, l. c. 775.

The question in the present case is: Do the words alleged to have been spoken by defendants only charge plaintiff with running

a whore house? Or, measured by a demurrer, may the words be construed to impute unchastity to plaintiff? It will be noted that the petition alleges that defendants, ▮▮▮▮ by the words used, "intended to mean and did mean, that plaintiff was guilty of adultery and was having immoral relations with soldiers", and that those who heard the words so understood. Sec. 3651, R. S. 1939, provides that "it is actionable to publish falsely and maliciously, in any manner whatsoever, that any person has been guilty of fornication or adultery."

In Haynes v. Robertson, 190 Mo. App. 156, 175 S. W. 290, the words alleged were: "Have you heard about Booker Haynes, the preacher, being caught in bed with Joe Leith's wife, and that he and Leith had a fight and that Leith blacked his eye, and that Haynes has gone west? It is so." Held that these words, under the circumstances shown, charged adultery and were slanderous per se. In Vanloon v. Vanloon, 159 Mo. App. 255, 140 S. W. 631, the words were: "What do you know about Clara, Jake's wife (the plaintiff) not being the kind of a girl she ought to be? You run her, you know you did while she worked for your hotel; you'll have to swear it; we are going to use you for a witness to show the kind of a woman she is; what do you know about Rafferty, the commission man, running her while the Richland fair was going on, at your house? He run her all right, for he told me he did." Held that these words were slanderous per se. In Kersting v. White, 107 Mo. App. 265, 80 S. W. 730, the words were, "Mr. Elms and Miss Kersting are living in sin together at Elms' house." Held, under the circumstances, that the question of slander was for the jury.

In McCollum v. Smith (Mo. App.), 199 S. W. 271, the plaintiff was a married woman, and the alleged slander was spoken to one Deskins, and stated in the petition as follows: "'What has that God damned black-tongued lying bitch been telling you?' to which question the said Fred Deskins said to the defendant, 'Who?' to which the defendant replied, 'Luther McCollum's wife.' 'You don't know all; the boys have been hanging around here like a pack of dogs after a bitch.'" In the McCollum case the defendant, on appeal, made the point that the trial court erred in permitting Deskins to testify that he understood the words, "The boys have been hanging around here like a pack of dogs after a bitch", to mean that the hanging around was "for unvirtuous purposes." In ruling the point adversely to the defendant the court said that the words were plain and needed no explanation, but that no harm was done defendant, and in connection with the ruling the court quoted with approval from Jones v. Banner, 172 Mo. App. 132, l. c. 138, 157 S. W. 967, as follows: "Words are to be taken in the sense which is most obvious and natural and according to ideas they are calculated to convey to those to whom they are addressed. The principle of common sense which now governs in the construction of words requires that courts shall understand them as

other people would. The question always is, how would ordinary men naturally understand the language?" See also, McGinnis v. George Knapp & Co., 109 Mo. 131, l. c. 140, 18 S. W. 1134; Crandall v. Greeves, 181 Mo. App. 235, 168 S. W. 264.

. So far as appears from the present petition plaintiff, her stepdaughter, and the redhead were the only women who resided in plaintiff's home and by the petition, it would appear that defendants, on April 23, disclaimed any intention to impute any bad conduct to the stepdaughter by what they said on April 8. So the inference may be drawn that only plaintiff and the redhead were charged with having "soldiers running in and out day and night", or as expressed on April 23rd, with "running a whore house." Since plaintiff and the redhead were the only women in the house who had the soldiers running in and out day and night, the inference, we think, could be fairly drawn from the words spoken that defendants meant that plaintiff herself was indulging in promiscuous sexual relations with the soldiers, hence the question as to what offense defendants intended to impute to plaintiff was for the jury. Kersting v. White, supra; Lemaster v. Ellis, 173 Mo. App. 332, 158 S. W. 904.

The judgment should be reversed and the cause remanded with direction to set aside the order sustaining the demurrer, and set aside the order of dismissal. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER·CURIAM·:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.