## CLARA VANLOON, Respondent, v. JOHN W. VANLOON, Appellant.

### Springfield Court of Appeals, November 6, 1911.

1. SLANDER: Words Slanderous Per Se: Privileged Communication. Plaintiff, in an action for slander, alleged that at the time she had a suit pending against her husband for divorce, the defendant who was her husband's father went to one White and said, "What do you know about Clara, Jake's wife (meaning this plaintiff), not being the kind of a girl she ought to be? You run her you know you did, when she worked for your hotel. You'll have to swear it; we are going to use you for a witness to show the kind of a woman she is; what do you know about Rafferty, the commission man, running her while the Richmond fair was going on, at your house; he run her all right for he told me he did." *Held*, that these words, taken in connection with the circumstances under which the conversation was had and when explained by the entire conversation, give them a plain and unambiguous meaning and imputed that plaintiff had been guilty of immorality and unchaste conduct and were slanderous *per se*. *Held*, further, that this was not a privileged communication, though defendant at the time was seeking evidence to help his son in the divorce case.

2. ———: Meaning of Words: When Question for Jury. In actions for slander the words are to be understood in their popular sense. If the meaning is fairly ambiguous and one allowable meaning is libelous, the case may go to the jury. If, however, the meaning is unambiguous and will not reasonably admit of a libelous construction, the question is for the court.

3. ———: Words Slanderous Per Se: Malice Need Not Be Proven. Where the words alleged to have been spoken are slanderous *per se*, it is unnecessary to prove express malice. Malice is presumed.

4. ———: Question for Jury: Appeal and Error. In an action for slander where the jury found that defendant uttered the slanderous words charged in plaintiff's petition, and there was substantial evidence to support the finding, an appellate court will not interfere with the verdict because not sustained by a preponderance of the evidence.

5. PLEADING: Motion to Elect: Answering Over: Slander.   In an action for slander where defendant filed a motion to elect, which was overruled and defendant then filed his answer to the merits, *held*, that by answering over defendant waived his motion to elect.

6. ———: Slander: Words Charging Different Offenses: Suit in One Count.   In an action for slander all the words spoken at one time may be put into one count, although they may impute different offenses.   It is in fact but one tort and can give rise to but one cause of action.

7. SLANDER: Privileged Communication.   Where a s'anderous communication is alleged to be privileged, such question then becomes one of law to be determined by the court in the first instance.   The burden of showing the privileged character of such communication rests on the defendant.

8. ———: Qualifiedly Privileged Communication.   A qualifiedly privileged communication is defined as a communication made bona fide by a party having an interest to one having a corresponding interest.

9. DAMAGES: Slander: Words Slanderous Per Se: Actual Damages Need Not Be Proven.   When the slanderous words spoken are actionable *per se*, plaintiff is not required to introduce evidence of actual damages to be entitled to substantial damages, since, in the absence of any evidence of damage, the law will presume damage.

10. SLANDER: Evidence: Attacking Plaintiff's Character: Specific Acts of Immorality.   In an action for slander it is not permissible for defendant to attack the reputation or character of plaintiff by undertaking to show specific acts of immorality.

11. ———: ———: Mitigation of Damages.   It is not competent to show the good intent or good faith of a slanderer in order to mitigate the damages, by proof of facts of which the slanderer had no knowledge at the time he gave utterance to the slander.

Appeal from Pulaski Circuit Court.—*Hon. L. B. Woodside*, Judge.

Affirmed.

*Bland, Crites & Murphy* for appellant.

(1) The words alleged to have been spoken not being slanderous per se, the petition fails to state a cause of action, and the court should not have allowed the case to go to the jury. Adams v. Hannon, 3 Mo. 222; Walker v. Hoeffner, 54 Mo. App. 558; Kerone v. Block, 144 Mo. App. 575; Kunz v. Hartwig, 151 Mo. App. 103; Flowers v. Smith, 214 Mo. 134; Cooper v. Seaverns, 105 Pac. 509; Clute v. Clute, 76 N. W. 1114; Radke v. Kolbe, 82 N. W. 977; Schæfe v. Schœnborn, 111 N. W. 843; Jeffery v. Gill, 106 Pas. 129; Brinsfield v. Howeth, 68 Atl. 566; Huddleston v. Swope, 71 Ind. 430; Linck v. Kelley, 87 Am. Dec. 362; Newell on Slander and Libel (2 Ed.), sec. 31, pp. 603, 613; 13 Ency. Pl. & Prac. 32.  (2) The court below should have sustained the defendant's motion to compel the plaintiff to elect on which cause of action she would proceed to trial. Christal v. Craig, 80 Mo. 367; Flowers v. Smith, 214 Mo. 129.  (3) Conceding the testimony of respondent to be true the court should have instructed the jury as to qualified privilege as asked by defendant. Holmes v. Union, 222 Mo. 556; Brinsfield v. Howeth, 68 Atl. 566.  (4) A general verdict is not good for two causes of action stated in the same petition in one count, therefore the motion in arrest of judgment should have been sustained. Christal v. Craig, 80 Mo. 367; Flowers v. Smith, 214 Mo. 129; Shohoney v. Railroad, 223 Mo. 686.

*W. D. Johnson, C. H. Davis* and *G. W. Goad* for respondent.

(1) The words alleged to have been spoken could have no reasonable meaning, other than, that plaintiff had committed adultery, and are objectionable per se. Caruth v. Richerson, 96 Mo. 186; Utterberger v. Scharff, 51 Mo. App. 102; McGinnis v.

Knapp, 109 Mo. 141; Walker v. Hœffner, 54 Mo. App. 554; Lyons v. Stratton (Ky.), 43 S. W. 446; Nicholson v. Merritt (Ky.), 59 S. W. 25; Nicholson v. Rust (Ky.), 52 S. W. 933; Burnett v. Ward (Ohio), 38 Am. Dec. 561; Proctor v. Owens, 81 Am. Dec. 341; Patterson v. Wilkinson (Me.), 92 Am. Dec. 568; De VanRose v. Tholborn, 134 S. W. 1093; Iles v. Smith, 66 N. E. (Ill.) 1042; Stewart v. Major, 49 Pac. 503; Rounie v. Ryder, 8 N. Y. S. 5; Kedrolwausky v. Neibourne, 11 Pac. 641; Elain v. Badger, 23 Ill. 498; Journal Co. v. Beymer, 42 Ill. App. 443; Waugh v. Waugh, 47 Ind. 580; Brierer v. Burhfield, 1 Watts, 23; Hasker v. Ore, 10 Watts, 243; Zeliff v. Jennings, 61 Tex. 458; Wilcox v. Moon, 63 Vt. 481; Desham v. Desham, 82 N. W. 218; Downing v. Wilson, 36 Ala. 717; Wilson v. Barnett, 45 Ind. 163; McBrazer v. Hill, 26 N. C. 136; Vanderlip v. Roe, 23 Pac. 82; Hendrickson v. Sullevan, 44 N. W. 448. (2) When the meaning of the words complained of is doubtful, the question is for the jury, and the meaning is to be gathered from the context and all the facts and circumstances under which they were used, and given their usual, popular and natural meaning. Moriss v. Sailer, 154 Mo. App. 305; Julian v. Star Co., 209 Mo. 35; McGinnis v. Knapp, 109 Mo. 141; Academy v. Garrier, 125 Mo. 526; Uckman v. Daily Rec. Co., 189 Mo. 394; Rodgers v. Kline, 31 Am. Rep. (Miss.), 389; Cooper v. Seaverns, 105 Pac. (Kas.) 509; Clute v. Clute, 76 N. W. (Wis.) 1114; Radke v. Kelbe, 82 N. W. (Minn.) 977; Isreal v. Isreal, 109 Mo. App. 366; Johnson v. Force, 32 N. W. 182; Johnson v. Dispatch Co., 65 Mo. 539; Fallenstein v. Booth, 13 Mo. 427; 25 Cyc. 319; Jackson v. Williams, 123 S. W. (Ark.) 751. (3) By answering over the defendant waived his motion to elect. Hoff v. Transit Co., 213 Mo. 465; White v. Railroad, 202 Mo. 539; Paddock v. Somers, 102 Mo. 235; Cook v. Printing Co., 227 Mo. 525. (4) Defendant's motion to compel plaintiff to elect on which cause of action she would proceed to

trial was properly overruled, as only one crime or offense was charged and at the same time in the same conversation. Brown v. Wintsch, 110 Mo. App. 264; Pennington v. Meeks, 46 Mo. 217; Cook v. Printing Co., 227 Mo. 471; Bank v. Tracey, 141 Mo. 252. (5) The court properly refused to instruct the jury as to the qualified privilege as asked by defendant. Holmes v. Fraternal Union, 222 Mo. 556; Wagner v. Scott, 164 Mo. 289; Sullivan v. Com. Co., 152 Mo. 268; Heller v. Pulitzer, 153 Mo. 205; Arnold v. Jewitt, 125 Mo. 241; McGinnis v. Knapp, 109 Mo. 141; State v. Armstrong, 106 Mo. 395; Finley v. Steele, 159 Mo. 299; Callahan v. Ingram, 122 Mo. 365; DeVan Rose, v. Tholborn, 134 S. W. (Mo.) 1093; Nix v. Caldwell, 5 Am. Rep. (Ky.) 163; Cole v. Grant, 18 N. J. L. 327; Branstetter v. Dorrough, 81 (Ind.) 527; York v. Johnson, 116 Mass. 482; Carpenter v. Willy, 26 Atl. (Vt.) 488. (6) Instruction No. 2 for plaintiff was properly given. Actual damage which includes mental suffering need not be alleged or proven. Brown v. Knapp, 213 Mo. 655; Light Co. v. Pub. Co., 113 S. W. (Tex.) 574; Cook v. Pub. Co., 227 Mo. 550; Baldwin v. Boulware, 79 Mo. App. 5; Isreal v. Isreal, 109 Mo. App. 366; Hummons v. Douglas, 50 Mo. 439; Natt v. Stoddard, 88 Am. Dec. 633; Chesley v. Thompson, 137 Mass. 136; Taylor v. Hearst, 40 Pac. 392; Cribb v. Yore, 77 N. W. 927. (7) Instruction No. 2 on behalf of defendant was properly refused. Yager v. Bruce, 116 Mo. App. 473; DeVan Rose v. Tholborn, 134 S. W. (Mo.) 1093; Byron v. Colliur, 19 N. E. (N. Y.) 75; Nott v. Stoddard, 88 Am. Dec. (Vt.) 633; Webber v. Vincent, 9 N. Y. S. 101. (8) The court properly rejected the Ed Ricker letters. The general reputation of plaintiff was in issue, but evidence of particular facts were inadmissible. Yager v. Bruce, 116 Mo. App. 473; Stouwall v. Beagle, 79 Ill. 525; Robertson v. Hamilton, 45 N. E. 56; DeVan Rose v. Tholborn, 134 S. W. (Mo.) 1093.

NIXON, P. J.—This was an action for damages for slanderous words alleged to have been spoken of and concerning the plaintiff, Clara Vanloon, by the defendant, John W. Vanloon (plaintiff's father-in-law), in the presence of John P. White. The case was tried before a jury in the circuit court of Pulaski county where the plaintiff obtained judgment for actual damages in the sum of eight hundred dollars. Defendant has appealed.

The petition was as follows (caption omitted):

"Plaintiff states that the defendant in this cause of action is the father of J. A. Vanloon, hereinafter referred to; that John P. White is and was at all times hereinafter mentioned, proprietor of the Central Hotel in the city of Richland, in Pulaski county and state aforesaid; that 'Rafferty,' hereinafter referred to is C. M. Rafferty, a member of and salesman of the Live Stock Commission Merchants of National Stock Yards, Illinois; that the street fair of the city of Richland was on or about the last three days of September, 1909, and that the said C. M. Rafferty attended the said street fair on the date aforesaid and was the guest of the said John P. White at the said Central Hotel; that this plaintiff was employed by the proprietor of said hotel and assisted in the cooking and taking care of the dining room for hire; that on the 7th day of July, 1907, plaintiff was lawfully married to J. A. Vanloon, aforesaid, and was abandoned by him on the 24th day of July, 1907, and left wholly without the means of support; that the plaintiff had instituted her suit to be divorced from her husband, the said J. A. Vanloon, in the circuit court of Pulaski county, Missouri, and the same was pending at the September term of court, 1910, but was continued for want of legal service upon the said defendant in said divorce proceeding, and said cause was still pending in said court, which convened on the third Monday in September, 1910, and on the 19th day thereof; that it

became known to defendant in the above entitled cause, John W. Vanloon, that plaintiff was going to ask judgment in her suit for divorce as aforesaid for alimony against the said J. A. Vanloon. All of which was well known to the said defendant, John W. Vanloon.

"For cause of action plaintiff states that at a date unknown to her, but during the said term of the Pulaski County Circuit Court, 1910, in the town of Waynesville in said county and state, in the presence and hearing of the said John P. White, proprietor of the said Central Hotel in the city of Richland aforesaid, and to the said John P. White used and published the following false and slanderous words, to-wit: 'What do you know about Clara, Jake's wife (meaning this plaintiff) not being the kind of a girl she ought to be? You run her, you know you did while she worked for your hotel; you'll have to swear it; we are going to use you for a witness to show the kind of a woman she is; what do you know about Rafferty, the commission man, running her while the Richland fair was going on, at your house? He run her all right, for he told me he did.'

"And that when the above words were spoken by defendant to the said John P. White, both White and defendant knew she had been employed as servant by the said White and that as such servant she resided and worked at the hotel aforesaid.

"That by the words so used the defendant intended to and did refer to this plaintiff; and by such words he intended to and did charge plaintiff with the offense of adultery with the said John P. White and the said Rafferty, and that the said words were so understood by the said White at the time thay were spoken to him.

"That said words so spoken, used and published, were and are false; that they were known to be false by the defendant at the time he spoke them; that they

were falsely and maliciously spoken by the defendant, of and concerning plaintiff, and were spoken with the intent to defame the good name and reputation of this plaintiff and for the purpose of defeating this plaintiff in her divorce suit against the said J. A. Vanloon, husband of plaintiff, and son as aforesaid of the defendant, and prevent her from obtaining judgment for alimony.

"That by said false, slanderous and malicious words spoken, used and published as aforesaid, plaintiff was made to suffer great mental pain, was greatly damaged in her good name and fame, and by said false and malicious words spoken, used and published as aforesaid, plaintiff's reputation as a pure, virtuous and chaste woman was and is greatly injured; and that she has suffered great humiliation and disgrace thereby, all to her actual damage in the sum of five thousand dollars.

"Wherefore, plaintiff prays judgment in the sum of five thousand dollars actual damage, and the sum of five thousand dollars punitive damages, and the total sum of ten thousand dollars, with costs."

The answer was (1) a general denial, (2) a special denial of the speaking of the words charged, and (3) a plea that at the time in question a suit for divorce and alimony was pending in the circuit court of Pulaski county wherein Clara Vanloon was plaintiff and J. A. Vanloon was defendant; that J. A. Vanloon, defendant in that suit, is the son of John W. Vanloon, defendant in this suit; that in good faith and upon advice of his son's counsel, defendant made various inquiries concerning the acts and conduct of Clara Vanloon; that he inquired of one John P. White regarding the plaintiff, and that instead of making the statements alleged to have been made of and concerning the plaintiff, he did in confidence speak of and concerning the plaintiff the following words and have the following conversation with the said John P.

White regarding her: "That this defendant said to the said John P. White, 'John, what do you know about Clara in regard to being straight?' That the said John P. White replied, 'She is a perfect lady so far as I know.' That this defendant then said, 'John, I have heard that you have been running her; do you care for being used as a witness?' To which the said John P. White replied, 'All right, I will be glad to tell anything I know.' That this defendant then said, 'Do you know anything about Rafferty and her? I have been told that he was running her.' To which the said White replied, 'He may have been, but I am confident he did not.'" That this was the entire conversation and that his statements were proper inquiries which he had a right to make, and that the words were not uttered in malice for the purpose of imputing to the plaintiff the crime of adultery or to defame her good name and reputation, but in good faith for the purpose of inquiring of and concerning the acts and conduct of the plaintiff with relation to the suit then pending between plaintiff and his son, and in confidence to the said John P. White.

The reply was a general denial.

At the close of the plaintiff's evidence, the defendant requested and the court refused to give the following instruction: "The court instructs the jury that the words alleged in plaintiff's petition to have been spoken by defendant and so proved, do not constitute slander per se; that is, they are not, within themselves, slanderous, and the burden is upon the plaintiff to show that the defendant spoke them to the said John P. White with the intent to and that the said White so understood them to impute the offense of adultery with the said White and with one Rafferty, and the plaintiff having failed so to do you will return a verdict for the defendant."

1. The principal contention on this appeal is that the words charged in the petition to have been

spoken are not slanderous per se, the argument being that they do not bear a sinister meaning on their face, in and of themselves; that it is necessary to look to the innuendo in the petition to ascertain the sense in which they were used, and that the innuendo cannot serve as a substitute for averment.

Appellant claims that the word "run" has certain fixed and well-understood meanings; that men in common parlance have been accused of "running" others, or of "running" the state or nation, but appellant has never understood it to mean anything of the character attempted to be charged in plaintiff's petition.

Section 5424, Revised Statutes, 1909, is as follows: "Sec. 5424. *What words are actionable.* It is actionable to publish falsely and maliciously, in any manner whatsoever, that any person has been guilty of fornication or adultery."

In the case of McGinnis v. Geo. Knapp & Co., 109 Mo. l. c. 139, 18 S. W. 1134, Judge Sherwood said: "In determining the meaning of the words of which complaint is made, it is entirely legitimate to consider the meaning to be imputed to them while at the same time considering the extrinsic facts and circumstances with which such words are connected. . . . 'Words are now construed by courts as they always ought to have been in the plain and popular sense in which the rest of the world naturally understood them.' [Roberts v. Camden, 9 East, 93] 'It is quite clear, from all the modern authorities, that the court must read these words in the sense in which ordinary persons, or in which we ourselves, out of court, reading this paragraph, would understand them.' [Tenderden, C. J., in Harvey v. French, 1 Cr. & M. 11]." "In modern times the general rule of construction is that words are to be taken in the sense which is most obvious and natural and according to the ideas that they are calculated to convey to those to whom they are addressed. The principle of common sense which

now governs in the construction of words requires that courts shall understand them as other people would. The question always is, How would ordinary men naturally understand the language?" [18 Am. and Eng. Ency. Law, 974.] "Whatever may formerly have been the rule, the law is now settled that, in actions of slander, the words are to be understood in their popular sense. It is too late to call on a court to tax its ingenuity to find out some sense in which the words might have been spoken innocently. That absurdity is exploded." [Hudson v. Garner, 22 Mo. l. c. 431.] "The correct rule in construing words seems to be that they are to be taken not *in mitiori sensu*, but in their fair English meaning. That if the meaning is fairly ambiguous and one allowable meaning is libelous, the case may go to the jury. If, however, the meaning is unambiguous and will not reasonably admit of a libelous construction, the question is for the court." [Ukman v. Daily Record Co., 189 Mo. l. c. 394, 88 S. W. 60.]

Nor does the case of Kunz v. Hartwig, 151 Mo. App. l. c. 103, 131 S. W. 721, when considered with reference to the facts there under consideration, express a different view. What was said in that case must be considered with reference to the particular facts therein. In that case, the words charged to be slanderous, as finally sifted down, were, "I had intercourse with that woman." We said in the opinion in that case: "The question then is whether this is substantially a charge of adultery. For a man to charge that he has had intercourse with a woman does not *ex vi termini*, charge adultery." And in such case the words should be understood in their innocent sense unless there are averments in the petition giving them other and sinister meaning. In the Kunz case we cited as authority the case of Merritt and Wife v. Dearth, 48 Vt. 63. In the Vermont case, the averment of the petition was that the defendant told

Henry Williams that he had had intercourse with Martha, one of the plaintiffs, and the petition contained no prefatory averments of the occasion and sense and meaning with which the words were spoken. It was held that the crime of adultery was not imputed, the court saying: "We have political and religious intercourse; domestic, social and commercial intercourse; but the word never in common parlance or legal sense, imputes or implies sexual or criminal intercourse, unless made specific by some qualifying term."

It seems to us that the words charged to have been uttered by the defendant in the case at bar, considered in connection with the surrounding circumstances and explained by the entire conversation, have a plain and unambiguous meaning to the ordinary man and could not reasonably be understood to mean simply that plaintiff was keeping company in a social way with men, but imputed that plaintiff had been guilty of immorality and unchaste conduct and tended to blacken the plaintiff's reputation and expose her to contempt.

The defendant was admittedly seeking evidence of Clara Vanloon's unchastity to be used against her in her then pending suit for divorce and alimony against defendant's son. The very words charged to have been spoken show to the satisfaction of any reasonable mind that a charge of adultery was carried therein. Defendant starts the conversation with the inquiry, "What do you know about Clara, Jake's wife, *not being the kind of a girl she ought to be?*" Then he follows up with, "You run her, you know you did while she worked for your hotel; you'll have to swear it; we are going to use you for a witness *to show the kind of a woman she is;* what do you know about Rafferty, the commission man, running her while the Richland fair was going on, at your house? He run her all right, for he told me he did." This was all said in one conversation. It is not necessary in order to constitute actionable

slander that the words should amount to a directly affirmative charge of fornication, adultery, or unchastity; it is sufficient if the words were calculated to induce the hearers to suppose and understand that the person against whom they were uttered was guilty of unchastity. [25 Cyc. 319.]

We hold that the words spoken were slanderous per se and that the trial court committed no error in refusing to give the requested instruction.

II. At the close of plaintiff's evidence, the defendant requested the court to peremptorily instruct the jury that such evidence was insufficient to support a judgment, which the court refused to do. The request for a peremptory instruction was renewed at the close of all the evidence and was again denied.

As the words alleged to have been spoken were slanderous *per se*, it was unnecessary to prove express malice. Malice is presumed. [Hudson v. Garner, supra.] No proof was required to show the intent with which they were spoken, or the way they were understood by the person to whom they were spoken. The proof which takes the case to the jury is found in the testimony of John P. White. He testified that he had known the plaintiff three or four years; that she had been in his employ at the Central Hotel in Richland, of which he was the proprietor, for about one year, and that she worked for Mr. Young who was the proprietor prior to himself; that he knew the defendant, and was also acquainted with C. M. Rafferty, a commission man of the National Stock Yards, in East St. Louis, Illinois. That during the September term of court, 1910, the defendant came to him in the courtroom and took him into one of the jury rooms where he introduced his son Jake, and said: "Now, John, Clara has sued Jake for a divorce and alimony; we are perfectly willing to give her a divorce and pay all the expenses, but we are not willing to give her any alimony, because

she is not the kind of a girl she ought to be." "He says, 'She is not the kind of a girl she ought to be; you have been running her and I am going to use you as a witness.' I says, 'All right, John, if you want to use me as a witness that is all right; I'll be glad to tell you anything I know, but Clara is a perfect lady as far as I know.' He says, 'What do you know about Charley Rafferty running her?' and I says, 'I don't know a thing in the world about it,' and he says, 'He run her because he told me he did. I could not go ahead and tell all that was said." *Cross-examination:* "Q. Now, Vanloon said to you, 'What do you know about Clara, in regard to being straight?' A. Yes, sir. . . . He said, 'John, you have been running her. I am going to use you for a witness.' I said, 'All right, I'll be glad to tell anything I know.' He said, 'What do you know about Rafferty running her? He run her because he told me he did." '

It will thus be seen that the charge was sufficiently proven. No other witness heard the conversation. The defendant, it is true, gave a different version, but the plaintiff made a case for the jury and it was their province to weigh the evidence and judge the credibility of the witnesses; and the jury having found that the defendant was guilty of having uttered the slanderous words charged in plaintiff's petition, and there being substantial evidence to support their finding, an appellate court cannot interfere with the verdict because not sustained by a preponderance of the evidence.

III.    Before the answer was filed in the circuit court, defendant moved that plaintiff be required to elect upon which charge of adultery she would proceed, claiming that she had united in the same count in her petition an action for an alleged slander by imputing the offense of adultery with one John P. White, with that of an action for an alleged slander by imputing the

offense of adultery with one Rafferty. This request was overruled. The request was renewed before the taking of testimony was begun and was again denied and exceptions saved. The action of the court in overruling this motion is assigned as error. Appellant calls attention to the petition in which it is alleged that by the words spoken the defendant intended to impute that the plaintiff had committed adultery with John P. White and C. M. Rafferty. Appellant contends that each is a distinct offense and ought to be laid separately "because one might be privileged or true, and the other might be true or privileged."

After the motion to elect had been filed and overruled, defendant filed his answer to the merits. Under the latest decision of our Supreme Court, the defendant, by answering over, waived his motion to elect. The earlier cases on this question cited by appellant were overruled in the case of Cook v. Globe Printing Co., 227 Mo. 471, 524, 127 S. W. 332. In the case last cited, the defendant also filed a motion to elect, bottomed on the theory that plaintiff had improperly joined in one count two separate and distinct libels, to wit, one charging that of perjury, and the other charging him with making a false, voluntary affidavit. The Supreme Court said: "In Hughes v. Rees, 4 Meeson and Welsby, 204, Lord Abinger said: 'You may put into one count all words spoken or written at one time; but I am not aware that you may put into one count matters published at different times.' The rule is that a single tort gives rise to one cause of action only and cannot be split up into separate suits and the damages resulting therefrom must be assessed in the same suit. [Bank v. Tracey, 141 Mo. 252.] The action here was based upon one publication only and the injury flowed from this one act. Thus the case presented is not unlike one in which different acts of negligence may be set forth in one count and all constitute one cause of action unless they

are inconsistent and self-destructive. In the publication set forth in the petition the imputations of perjury making a false affidavit and lying, are all charged and are not inconsistent, as the defendant could and did impute all of said different matters to the plaintiff, and we think the damages are not divisible. Nothing said in the case of Flowers v. Smith, 214 Mo. 98, is in conflict with this conclusion. In that case there were various newspaper publications made on different dates and in different issues of the paper and were united in one count and were clearly distinct and separate causes of action, as was held by this court. We think there was no merit in the claim of misjoinder, *but by answering over* and thereby tendering the issue of libel or no libel, *the defendant, under the long established rule of this State, waived its motion to elect.* [Hof v. Transit Co., 213 Mo. 1. c. 465; White v. Railroad, 202 Mo. 539; Paddock v. Somes, 102 Mo. 235.]" For the reasons stated it must be held that the overruling of defendant's motion was not reversible error.

IV. Appellant complains of the refusal of the trial court to give the following instruction: "1. The court instructs the jury that the defendant, John W. Vanloon, had the right to inquire of and from the said John P. White, concerning the character of the plaintiff, Clara Vanloon, provided he used the occasion for that sole reason and purpose and if you believe and find from the evidence that the said defendant in confidence and for the purpose of eliciting information from the said White as to what his testimony would be on behalf of his son then and in that event you will find the issues for the defendant unless you believe and find that the defendant employed the occasion in bad faith, to gratify some indirect or malicious motive or from some other improper reason; and in this connection the court instructs you that in making such inquiry the defendant had the

right in good faith, to inform the said White what his information was or had been in relation to such inquiry."

By its refusal to give this instruction, the court in effect determined as a matter of law that the slanderous language was not (under the circumstances surrounding its utterance) such a communication as was entitled to be protected as qualifiedly privileged. The weight of authority holds that where a slanderous communication is alleged to be privileged, such question then becomes one of law to be determined by the court in the first instance. The burden of showing the privileged character of such communication rests on the defendant. [Holmes v. Royal Fraternal Union, 222 Mo. 557, 121 S. W. 100.] A qualifiedly privileged communication is defined as a communication made bona fide by a party having an interest to one having a corresponding interest. [Finley v. Steele, 159 Mo. 299, 60 S. W. 108; Byam v. Collins, 111 N. Y. 143.] In the case of Sullivan v. Commission Co., 152 Mo. l. c. 277, the Supreme Court said: "Every defamatory publication prima facie implies malice, but where a communication is made in good faith, upon any subject matter in which the communicant has an interest or in reference to which he has a duty, legal, moral or social, to a person having a corresponding interest or duty, it is privileged, and the privilege rebuts the presumption of malice, and the burden of proof is cast upon the plaintiff to prove express malice. [Newell on Slander and Libel (2 Ed.), pp. 389 to 391.] But the interest must be common to both parties. . . . 'The statement must be such as the occasion warrants, and must be made bona fide to protect the private interests both of the speaker and of the person addressed.' . . . 'The privilege only extends to that portion of the communication in respect of which the parties have a common interest or duty.' " It is not claimed that John P. White, the recipient of the

communication in this case, had any interest or duty whatsoever in respect to the acts or conduct of Clara Vanloon. He was in no way affected. The privilege which the law recognizes can not be invoked to shield the appellant under the circumstances disclosed in this record. The occasion did not justify the terms employed by appellant or authorize the slanderous charges made against the respondent, and the court correctly held that they were not privileged.

V. The court in instruction No. 2 told the jury, "If you find the issues for the plaintiff you may allow as compensatory or actual damages such fair and reasonable compensation that you find naturally resulted from the speaking of the words complained of, and also for any pain or anguish of mind that you find was caused thereby." The verdict of the jury recites that they "find the issues for the plaintiff and assess her actual damages at the sum of $800." Appellant complains of the giving of the above instruction for the reason that plaintiff did not testify that she suffered any mental pain or anguish. We have held that the words were actionable per se. When the publication is actionable per se, plaintiff is not required to introduce evidence of actual damage to entitle her to substantial damages, since, in the absence of any evidence of damage, the law will presume damage. [Stieber v. Wensel, 19 Mo. 513; Rammell v. Otis, 60 Mo. 365; Price v. Whitely, 50 Mo. 439.] When a person charges a woman with having commited adultery, and, being sued, does not plead and prove justification, and a case is made for the jury on the issue of slander or on slander, a finding for the plaintiff must of necessity carry damages for the mentil suffering in addition to damages for injury to her reputation. As well said by the Court of Civil Appeals of Texas in the case of San Antonio Light Pub. Co. v. Lewy, 113 S. W. l. c. 579: "It was not necessary to aver

the nature, character, nor extent of the mental suffering caused her by the publication of the libelous article. It would baffle the powers of the most skilled anatomist to describe or measure one's mental suffering. He may 'minister to a mind diseased,' but an accurate description or measurement of mental suffering is 'past all surgery.' "

VI. Defendant offered two letters written to Clara Vanloon by one Ed. Ricker, a traveling salesman, presumably for the purpose of attacking her general reputation for chastity, or in mitigation of damages. Ed. Ricker was not one of the men mentioned in the slanderous charge. The contents of the letters would perhaps shed some light on unchaste conduct of Clara Vanloon with Ed. Ricker, but as said in the case of De Van Rose v. Tholborn, 134 S. W. 1093, recently decided by this court, "It is not permissible for defendant to attack the reputation or character of plaintiff by undertaking to show specific acts of immorality, and the court rightly excluded the offered testimony." Those letters were not competent to show, in mitigation of damages, appellant's absence of actual malice, because there is no evidence that appellant at the time of uttering the slanderous words knew of the existence of such letters, and consequently he could not have been influenced by their contents in making the charge. It is apparent that it is not competent to show the good intent or good faith of a slanderer in order to mitigate the damages, by proof of facts of which the slanderer had no knowledge at the time he gave utterance to the slander. [Palmer v. Mahin, 120 Fed. 737, 747.] The court committed no error in excluding the letters.

Finding no error in the record materially affecting the merits, the judgment is affirmed. All concur.