## NORA LEMASTER, Respondent, v. FRANK ELLIS, Appellant.

**Springfield Court of Appeals, July 28, 1913.**

1. **SLANDER: Petition: Allegations: Proof.** In an action for slander, the sufficiency of the petition is not to be judged by the sufficiency of the allegations which are actually proven.

2. **————: Utterances Interpreted: Question for Jury.** Even where words spoken are not slanderous *per se*, they are to be considered by the jury and their meaning determined in the light of extrinsic facts and circumstances under which they are spoken. And if, in the light of these facts and circumstances the words are reasonably capable of being interpreted as containing the slanderous meaning the question is for the jury.

3. **————: Allegations of the Petition: Proving Exact Words.** In an action for slander, the plaintiff is required to prove sufficient of the exact words charged to constitute the slander, the proof of equivalent words not sufficing.

4. **————: Proof of Exact Words: Sufficiency.** In an action for slander the petition alleged that the defendant's words were: "Had you heard about L. B. and N. L. running away together? They (meaning plaintiff N. L. and L. B.) have gone and are now living together in Pueblo;" the evidence showed that the defendant when asked by the plaintiff if he had made the statement, replied: "Yes, I was talking with Mr. W. and asked him if he had heard anything of the kind." And defendant admitted that he said to Mr. W.: "I have heard that B. and N. (meaning plaintiff) run off together." *Held,* that although the exact words charged in the petition were not proven, yet the admission of the defendant, taken with his other testimony, sufficiently proved the precise charge of slander alleged.

5. **INSTRUCTIONS: Contradictory or Confusing: Erroneous.** Instructions should not be contraditory nor should they tend to confuse the jury.

6. **SLANDER: Words Not Actionable Per se: Necessary Proof.**
Where words which were uttered do not in and of themselves
necessarily carry a slanderous meaning, but may do so in the
light of the occasion and extrinsic facts and circumstances
leading up to them and surrounding the parties at the time
of the utterance, such other facts and circumstances must be
shown in order to make a case of slander.

7. **————: Intention of Utterer: Hearer's Understanding.** It is
essential in proving slander to show that the hearers under-
stood the words in a defamatory sense and that the utterer
used them in that sense.

8. **————: Meaning of Utterance: Evidence.** In an action for
slander evidence as to the actual understanding of the hearers
of the words uttered is admissible.

9. **INSTRUCTIONS: Necessary Statement: Omission of: Error.**
In an action for slander, an instruction which fails to require
the jury to find that the person to whom the alleged defama-
tory words were spoken, and the only person who did hear
same, understood the words spoken to charge or impute a
slanderous meaning, is an erroneous instruction.

10. **————: Words Relied On: Must Be Pleaded.** In a suit for
slander an utterance, which is a part of the same conversation
in which the alleged slanderous words were alleged to have
been uttered must be pleaded, in order to be relied on as con-
stituting a necessary part of the defamatory charge.

Appeal from Lawrence County Circuit Court.—*Hon.
Carr McNatt*, Judge.

REVERSED AND REMANDED.

*J. S. Davis* and *I. V. McPherson* for appellant.

(1) The court erred in admitting any evidence
offered by the plaintiff under her petition for the reason
the same stated no cause of action. 13 Ency. Pl. and
Pr. 55; Townsend on Slander and Libel, sec. 338;
Ukman v. Daily Record Co., 189 Mo. 394; 25 Cyc.
450; Dyer v. Morris, 4 Mo. 214; Fallenstein v. Booth,
13 Mo. 427; Christal v. Craig, 80 Mo. 369; Boyce v.
Aubuchon, 34 Mo. App. 318; Bundy v. Hart, 46 Mo.
462; Powell v. Crawford, 107 Mo. 598. (2) The

court erred in refusing the peremptory instruction requested by the defendant at the close of all the evidence, because plaintiff's petition stated no facts sufficient to constitute a cause of action and because the slanderous words charged if they are actionable were not proved to have been uttered by the defendant, heard and understood by those to whom uttered. O'Donnell v. Nee, 86 Fed. 96; Heller v. Howard, 11 Ill. App. 554; Shinglemeyer v. Wright, 82 N. W. 887; McGeever v. Kennedy, 42 S. W. 114; Walker v. Hoeffner, 54 Mo. App. 554; Clemons v. Maloney, 55 Mo. 354; Lewis v. McDonald, 82 Mo. 579. Uttenberger v. Scharff, 51 Mo. App. 102. (3) Instructions No. I and II were not based upon any evidence and were inconsistent with other instructions, hence erroneously given. Willis v. Heat & Power Co., 111 Mo. App. 580; Stevenson v. Hancock, 72 Mo. 612; Spillane v. Railroad, 111 Mo. 565; Julian v. Kansas City Star, 209 Mo. 76, 79. (4) Instruction No. 4 undertood to broaden the issues beyond the pleadings and was erroneous. Noeninger v. Vought, 88 Mo. 592. (5) The court erred in overruling the defendant's motion for a new trial. Where words are declared on the meaning of which is unambiguous and will not reasonably admit of the slanderous construction placed upon them by the plaintiff their meaning is for the court. Odgers on Libel and Slander (2 Ed.), 94, et seq; Newell on Slander and Libel (2 Ed.), p. 290, sec. 4; Ukman v. Daily Record Co., 189 Mo. 394; Tippens v. State, 43 S. W. 1000; Kenworthy v. Brown, 92 N. Y. S. 34.

*McNatt & McNatt* for respondent.

(1) The petition was in the usual form, and stated a good cause of action for slander. Vanloon v. Vanloon, 159 Mo. App. 255; McGinnis v. Knapp & Co., 109 Mo. 141; Morris v. Salier, 154 Mo. App. 305; Israel v. Israel, 109 Mo. App. 366; Brown v. Wisnch, 110 Mo.

App. 264; Rose v. Thorlborn, 153 Mo. App. 409; Adams
v. Harmon, 3 Mo. 124; Moberly v. Preston, 8 Mo. 462;
Birch v. Benton, 26 Mo. 161. (2) The court properly
refused the peremptory instruction, because the allega-
tions of the petition were sustained by the testimony of
witnesses, as well as by the admissions of the defendant.
Hauser v. Steigers, 137 Mo. App. 560; Lewis v. Mc-
Daniel, 82 Mo. 577. (3) Instructions 1 and 2 were
supported by abundant evidence. Vanloon v. Vanloon,
159 Mo. 264; McGinnis v. Knapp, 109 Mo. 141. (4)
Instruction 4 does not broaden the issues beyond the
pleadings. Cook v. Globe, 227 Mo. 471; Morris v.
Salier, 154 Mo. App. 313; McGinnis v. Knapp, 109 Mo.
141; State v. Norton, 89 Me. 290. (5) The court
properly overruled the motion for a new trial, for the
language used in the pleadings and found by the jury
to have been spoken by the defendant, under the
instructions constitute a meritorious cause of action.
Vanloon v. Vanloon, 159 Mo. App. 264; Brown v.
Wintsch, 110 Mo. App. 264; Rose v. Tholburn, 153
Mo. App. 408; Moberly v. Preston, 8 Mo. 462; Hauser
v. Steigers, 137 Mo. App. 560.

STURGIS, J.—This is a suit for slander. The
petition alleges that the plaintiff is an unmarried woman
and that she and her married sister and her sister's
husband, Logan Baxter, lived with her mother in the
country in Lawrence county, Missouri; that in the
spring of 1912 this plaintiff was absent from home
for a time as a traveling saleslady, and that about
the same time her sister's husband departed for the
State of Colorado; that the defendant also lived in the
same neighborhood and knew that Logan Baxter had
gone on a business trip. The petition then proceeds:
"Plaintiff further states that the defendant in certain
conversations had in the city of Aurora, Missouri, on
or about the first day of June, 1912, in the presence
and hearing of different persons then and there spoke

and published of and concerning the said plaintiff the following false, malicious and defamatory words, to-wit: ·'Had you heard about Logan Baxter and Nora Lemaster running away together? They (meaning the plaintiff and Logan Baxter) have gone and are now living together in Pueblo.' That the said defendant at the time said false and malicious words were spoken, knew that the plaintiff was an unmarried woman and that the said Logan Baxter was a married man, and the husband of her said sister, as did all the persons in whose presence and hearing said words were spoken, and that the said words and sentences so spoken by the said defendant were intended to mean and did mean and were so understood by all the parties who heard them, to impute and charge the plaintiff with having committed acts of unchastity and fornication and unlawful intimacy with the said Logan Baxter, husband of the plaintiff's sister aforesaid."

The petition also in a similar way alleges the utterance of other defamatory words, but, as it is conceded and the court so instructed the jury that there was no proof of the speaking of such other words, they need not be further noticed. The petition asks for, and the jury awarded, both compensatory and punitive damages.

The answer is a general denial with an averment that "what the defendant did say in the conversations attempted to be set out was that the plaintiff and the said Logan Baxter had each left home together and come to Aurora; that the said Logan Baxter had taken the Frisco train to Springfield and the plaintiff had taken the White river railroad to Crane; that the same was said in good faith, without malice on the part of the defendant who then and there honestly believed the same was true; that in the sense in which the same was uttered the said conversations and statements and words used by the defendant were true."

The answer also avers that if plaintiff's reputation has been injured that it was the result of her own conduct in frequently taking buggy rides with her brother-in-law to church and other places, and being with him frequently and that his conduct "towards her, and her manner, demeanor and conduct with and towards him was such that it caused comment and general conversation in the neighborhood unfavorable to the plaintiff."

The defendant challenges the sufficiency of the petition in this case on the ground that the words charged to have been uttered are not slanderous *per se* and are so plain and unambiguous as to be incapable of being enlarged by the averments made and by innuendo. In making this contention the defendant seems to have in mind the alleged slanderous words proven to have been uttered rather than those charged in the petition. It is obvious that the sufficiency of the petition is not to be judged by the sufficiency of the allegations therein which are actually proven. Had the plaintiff proven in this case the speaking of all the words charged in the petition, it would be dangerously near a case of slander *per se*. Certainly it would have made a case for the jury. It is well settled that even where the words spoken are not slanderous *per se*, that is, do not in and of themselves carry poison, they are to be considered by the jury and their meaning determined in the light of the extrinsic facts and circumstances under which they are spoken. If, in the light of all the facts and circumstances leading up to and surrounding the speaking of the words, they are reasonably capable of imputing and being interpreted as containing the slanderous meaning the question is for the jury. [Ukman v. Daily Record Co., 189 Mo. 378, 394, 88 S. W. 60; McGinnis v. George Knapp & Co., 109 Mo. 131, 139, 18 S. W. 1134; Vanloon v. Vanloon, 159 Mo. App. 255, 265, 140 S. W. 631.] The more serious question to be determined here is whether

the words proven, when taken in connection with the occasion on which they were spoken and the surrounding facts, are sufficient to take the case to the jury.

This case was tried in a somewhat peculiar way. It is shown that whatever was said by defendant that is claimed to be slanderous was said to one Wagnant, another farmer and neighbor of both plaintiff and defendant, and to him alone. Plaintiff testified that she did not claim that anyone else heard or could have heard the slanderous conversation. The plaintiff did not call Wagnant, the sole hearer of the defamatory words if any such were spoken by defendant, as a witness to make out her case. She made her case by her own evidence and that of her sister by testifying what the defendant had admitted to them that he had said to Wagnant on the occasion in question. Plaintiff and her sister, Mrs. Baxter, testified that before bringing this suit they went to see defendant and this is what occurred: "I called him out to the fence and he didn't seem to know who I was and I told him and my sister introduced herself as Mrs. Baxter, told him she was Baxter's wife, and I told him what I was there after, 'that I understood that he had said to some party or asked the party if he had heard that Logan Baxter and myself had run away,' and said to him that 'I understood that he had said that we were gone and were now in Pueblo together,' and upon my statement to him he said 'Yes.' I was talking to Mr. Wagnant at that farmer's day and asked him if he had heard anything of that kind; and he said 'Yes,' he had heard it and believed it." It will be noticed that in this claimed admission by defendant as to the words spoken, plaintiff did not, in framing defendant's words so as to obtain an admission or denial of the speaking of the same, use the words "living together in Peublo" charged in the petition, but the much milder language, "were now in Pueblo together." Mr. Wagnant was not called as a witness except in rebuttal to disprove

some collateral and not very material matters, and on cross-examination testified that defendant on the occasion in question said nothing about plaintiff and her brother-in-law living together anywhere.

When it is remembered that in making a case of slander the plaintiff is required to prove sufficient of the exact words charged to constitute slander and that proof of equivalent words will not suffice (Nicholson v. Rogers, 129 Mo. 136, 141, 31 S. W. 260; Clements v. Maloney, 55 Mo. 352, 357; Hauser v. Steigers, 137 Mo. App. 560, 568, 119 S. W. 52), this is not a very satisfactory way of making the proof. It is not of course claimed that the words then spoken by defendant to plaintiff and her sister constituted the slander but only that he admitted that he had on the previous occasion spoken certain words repeated to him by plaintiff. The defendant's attention was not called to the exact words and he was not asked or required to admit or deny whether or not the words put to him were the exact ones or any part of them the exact ones previously uttered by him; and, as above shown, plaintiff was not very accurate herself in putting the words to him. As said in Kunz v. Hartwig, 151 Mo. App. 94, 102, 131 S. W. 721: "It was at most merely a narration of a past occurrence of what the defendant had said and did not constitute a present charge or affirmation in the presence of Chandler that plaintiff was a whore. The utmost effect that could be given to this statement to Chandler as to what defendant had said to Kunz is that it was an admission that he had made the charge in the previous conversation. Viewed as an admission, it still falls far short of sustaining the specific charge made in the petition under the well-established rules of law in slander cases. The testimony does not go to the extent of showing the precise words in which the defendant made the defamatory charge when he had the talk with Kunz, and it does not follow because he told Kunz 'what kind of an old lying whorish bitch he was living

with' that he made the charge in the very words or in substantially the same words as laid in the petition and not in other words conveying an equivalent meaning. The defendant in his statement ·to Chandler did not necessarily undertake to give or quote the exact words he used in the particular conversation with Kunz. While this statement was competent evidence for the purpose of showing malice, it was insufficient to sustain the charge of speaking the specific words alleged in the petition; and unless the evidence went farther and showed that he used the words verbatim or substantially the words as alleged in the petition in making the defamatory charge, there would be under the law of libel and slander a material variance from the allegations of the petition." [See also Wood v. Hilbish, 23 Mo. App. 389, 398.]

The defendant's answer to plaintiff's inquiry of him, as narrated by plaintiff, would indicate that defendant was in nowise intending to admit the exact words as framed by plaintiff. We find, however, that the defendant took the witness stand and admitted that he did say to the witness Wagnant, "I have heard that Baxter and Nora (plaintiff) run off together." So that, if the words charged in the petition, "Had you heard about Logan Baxter and Nora Lemaster running away together" are fairly susceptible of a slanderous meaning when spoken on the occasion and under the circumstances averred in the petition and shown by the evidence, then it may be taken that there was proof of enough of the exact words charged to contain the poison and constitute the precise charge of slander alleged.

Under this proof of the slanderous words charged, the court gave this instruction: "The court instructs the jury that if you find and believe from the evidence in this case that the defendant spoke of and concerning the plaintiff on or about the —— day of April, 1912, the following statement: 'Had you heard of Logan

Baxter and Nora Lemaster running away together? They are gone and are now together in Pueblo.' That said words were spoken in the presence and hearing of another or others besides the plaintiff, or so many of said words were so spoken as would impute to the plaintiff of being unchaste, and that the words thus spoken are false, and that the defendant thereby meant to charge and did 'charge that the plaintiff was unchaste, and of having committed fornication with said Logan Baxter, and that said Logan Baxter was a married man and that said plaintiff was an unmarried woman, then you are instructed that the law presumes that the plaintiff was damaged by said statement and your verdict should be for the plaintiff.''

This instruction is objectionable in including in the words which the jury might find were uttered by the defendant, ''They are gone and are now together in Pueblo.'' In two instructions given for defendant these words are excluded and the jury told that there was no evidence tending to prove any of the language laid in the petition other than the interrogatory, ''Had you heard about Logan Baxter and Nora Lemaster running away together.'' Instructions should not be contradictory or tending to confuse the jury. [Smith v. Railroad, 126 Mo. App. 120, 123, 103 S. W. 593; Spillane v. Railroad, 111 Mo. 555, 565, 20 S. W. 293, and cases there cited.]

The more serious objection to the above instruction is that it failed to require the jury to find that the person to whom the alleged defamatory words' were spoken, and the only person who did hear the same, understood the words spoken to charge or impute a slanderous meaning, to-wit, acts of unchastity and fornication between plaintiff and her brother-in-law, Logan Baxter. That the words proven do not in and of themselves necessarily carry a slanderous meaning and impute acts of fornication is, we think, beyond question. That they may do so in the light of the oc-

casion and extrinsic facts and circumstances leading up to and surrounding the parties at the time of their utterance may be and is granted.    There must be, however, proof of such other facts and circumstances— evidence other than the mere speaking of these words— in order to make a case of slander.    In such cases the jury must find that the parties hearing the alleged slanderous words understood the same to have and impute the defamatory meaning.    [25 Cyc. 521.]

That the words proven are not slanderous *per se*, that is, do not of and in· themselves necessarily carry a defamatory meaning is shown by reading Kunz v. Hartwig, 151 Mo. App. 94, 103, 131 S. W. 721, where it is held that: "For a man to charge that he has had intercourse with a woman does not *ex vi termine*, charge adultery," citing as to the same words Merrit v. Dearth, 48 Vt. 63.    To say of a woman, "I stroked her," is not actionable *per se*. [Adams v. Hannan, 3 Mo. 222.]    To say of a woman, "She has been lying on the lounge with a male boarder" does not charge adultery or fornication.    [Koch v. Heidman, 16 Ill. App. 478.]    To say of a woman, "She is in the habit of entertaining gentlemen callers at all hours of the night" does not charge her with unchastity and is not actionable *per se*.    [Hemmens v. Nelson; 138 N. Y. 517, 34 N. E. 342.]    In this last case the court said: "It is possible that a call upon a lady, at a later hour than that prescribed by conventional rules, by gentlemen relatives or friends, may be entirely innocent.    It is quite possible, also, that a jury could find that the defendant intended, by the use of the words, to make a defamatory charge.    The intent of the defendant, and the sense in which the words were used, become in such cases an important inquiry."    In Walker v. Hoeffner, 54 Mo. App. 554, the court held that where defendant said of plaintiff that she had, "put her husband in a hospital and made ten·dollars a week out of her boarders in·a dishonest way," these words do not charge unchastity in the absence of actual

proof of the sense in which the hearers understood the charge.

That it is essential in proving slander to show that the hearers understood the words in a defamatory sense, as well as that the utterer used them in such a sense, is shown by the case last cited. "There was no proof to show that the words were spoken in the sense stated in the innuendo, and that the hearers so understood them. This we think was necessary. The words of themselves are not necessarily defamatory. If the defendant meant to charge that the plaintiff, who was a married woman, had been guilty of acts of adultery with her boarders, and if the hearers so understood them, then a cause of action as stated accrued, 'for slander and damage consist not only in speaking the words, but in the apprehension of the hearers.' On the other hand, if the defendant meant to charge that the plaintiff was in some way cheating or defrauding her boarders, and the hearers so understood him, then there could be no recovery under the allegations of the petition. Therefore, there should have been some evidence from which the jury could have rightly inferred that the defendant spoke the words in the sense alleged in the innuendo, and that the hearers so understood him. This view we think finds ample support in the books."

In Unterberger v. Scharff, 51 Mo. App. 102, 110, the court said: "Where words are not actionable in themselves, it is incumbent upon the plaintiff to allege that they were meant to convey a sense in which they are actionable, and were so understood by the hearers or bystanders. [Christal v. Craig, 80 Mo. 373.] But here the petition neither alleges, nor does the proof show, that the words, 'You are a liar; you did, and stuck the money in your pocket,' were understood by the hearers to mean that plaintiff had embezzled or stolen the money." In Bridgman v. Armer, 57 Mo. App. 528, 534, the court condemned an instruction because it did not include the hypothesis of defendant's

intention to charge a crime and of the understanding of the parties present as to what was meant by the words as they were used and applied. In Lewis v. Humphries, 64 Mo. App. 466, 471, the court said: "The rule to be deduced from the authorities to be presently cited, including those of our own State, is that, in an action where the words are not obviously slanderous, that, in order to entitle plaintiff to recover, first, he must allege and prove that the words were actually used in an actionable sense and were applied to plaintiff; second, that the hearers so understood them, and upon this latter point the testimony of the hearers as to how they understood them is admissible." Many authorities are cited in support of this proposition. The above quotation was quoted with approval by the Supreme Court in Julian v. Kansas City Star, 209 Mo. 35, 79, 107 S. W. 496, and the court there further said, with reference to the class of cases where the words were on their face susceptible of more than one meaning, or, where words, innocent in themselves, may derive an offensive meaning because of certain conditions or circumstances under which they were uttered: "the question of fact is given to the jury, because the words are liable to convey to the minds of the hearers or readers a defamatory meaning, but before the jury can find for the plaintiff they must be satisfied, not only that the words were liable to convey the injurious meaning, but in fact did convey that meaning." It was a matter of much controversy in the Julian case, supra, and in other cases before the Supreme Court, whether or not in cases of libel the readers should be allowed to testify directly as to their own understanding of the printed words. A majority of the court in this case answered this question in the affirmative and such has been the doctrine of the Supreme Court ever since. [Branch v. Knapp & Co., 222 Mo. 580, 597, 121 S. W. 93.] The question on which the members of the Supreme Court differed was

not as to the necessity of proving that the hearers or readers understood the words in a slanderous sense, but as to the method of making such proof. The minority of the court held that in cases of libel, though not of slander, the plaintiff can give in evidence only the facts and circumstances connected with the publication and the jury are to conclude whether the words are libelous from them alone; while the majority held that evidence as to the actual understanding of the hearers is admissible. [Julian v. Kansas City Star, 209 Mo. 35, 127, 107 S. W. 496.] This principle of law is well expressed in Diener v. Star-Chronical Pub. Co., 230 Mo. 613, 629, 132 S. W. 1143, as follows: "In such case, the doctrine applies that the apprehension of the reader is the touchstone of interpretation. It was happily said by GOODE, J., in a case on which I cannot put my finger, that in this aspect a libel or slander is like unto a jest—i. e., the prosperity of each lies in the ear of the hearer—thus hitching the gravity of the law to the car of the light philosophy of Rosaline: 'A jest's prosperity lies in the ear of him who hears it, never in the tongue of him that makes it.' (Love's Labours Lost, Act V, Sc. 2)". It is not necessary to mention the author of this quotation. There is a school of philosophy teaching that sound does not exist except in the ear of the hearer and that Niagara rolls on in silence unless some ear is there to hear. While this may not be correct in the realm of acoustics it is correct in the law of slander, with the further fact that no one hears who does not understand.

We must hold, therefore, that this instruction given by the court constitutes error.

Some stress is laid by plaintiff on the fact that defendant also admitted that he said to Wagnant that some one had said in his presence that "he (Baxter) left a better looking woman (his wife) than he run off with (plaintiff)." These words are not laid in the petition in this form. They are part of the same conver-

sation and if they are to be relied on as constituting a necessary part of the defamatory charge they must be pleaded.

We are asked to reverse this case without remanding on the ground that there is no evidence from which the jury could infer that the words used imputed any act of fornication or that would warrant any such understanding by the hearer. As stated, the only person who heard the words spoken did not testify as to his understanding of the same, but this is not the only way of proving such meaning and understanding. We think the facts and circumstances, though not very fully pleaded, leading up to and surrounding the speaking of the words proven, are such that the jury might reasonably conclude and find in the light and with the aid of such extrinsic facts that the defendant intended to charge plaintiff with unchastity and fornication, and that Wagnant so understood the same. The case however is a close one and for this reason we cannot hold that the errors above mentioned are harmless.

It results that this case must be reversed and remanded. *Farrington, J.,* concurs. *Robertson, P. J.,* dissents.