## RIVERS v. FEAZELL.

No. 2369.

Court of Civil Appeals of Texas. Beaumont.
March 2, 1933.

Adams & McAlister, of Nacogdoches, for appellant.

R. W. Fairchild and J. J. Collins, both of Lufkin, for appellee.

WALKER, Chief Justice.

This is a suit for slander, filed in the district court of Nacogdoches county by appellant, Mrs. Effie Rivers, against appellee, J. Fred Feazell, who on September 19, 1931, was operating a café in the city of Nacogdoches, Nacogdoches county, Tex., and for whom appellant was working as cashier on the date mentioned. On the morning of that day, appellant's son, Keith Rivers, ate his breakfast at appellant's café and went by his mother's desk to pay for his breakfast. Appellee, being suspicious of appellant, secretly watched the transaction, and, after Keith Rivers left his mother's desk, appellee took charge of the desk and the cash register which she was operating. After ringing up a few orders, he took the record of the morning's work out of the machine, with some of the tickets, and went back to his office. In a short while he called appellant to his office, which was in the balcony just above the dining room of the café. When she entered his office, she found appellee and with him his son-in-law, Clifton Tannery, who was the general manager of the café and the bakery which appellee operated in connection with his café. This suit rests upon what occurred between appellant and appellee at that time; the facts being pleaded by appellant as follows:

"That on the 19th of September, 1931, the plaintiff, while in the discharge of her duties in defendant's place of business, which was then and there being patronized by various and sundry customers and citizens, who were then in said place of business for the purpose of being served with goods, wares and merchandise as sold by the defendant, the defendant without any reason, cause or provocation, called to the plaintiff from the veranda where defendant was standing, which is located in defendant's place of business over and above the cashier's stand where the plaintiff was working, to come up where he, the defendant, was with Clifton Tannery and in the presence and hearing of others who were in the store and those who could hear and understand what was being said by the defendant to plaintiff, and that after the plaintiff reached the veranda where the defendant was, as aforesaid, the defendant in an angry, irritable and agitated mood,

said to plaintiff: 'Mrs. Rivers, I have the deadwood on you, you can just get your hat and things and go home and I will mail your check to you.' And at this instance plaintiff replied: 'Mr. Fred, what do you mean?' And the defendant, in a sullen, morose and sulky manner, replied: 'A while ago when Keith (meaning plaintiff's son) went to pay his bill, you did not take any money.' And at this instance the plaintiff replied: 'Why, Mr. Fred, I certainly did. He laid a quarter down on the counter and I picked up a nickel that was already laying there and gave it to him and took the quarter.' And at this the defendant, with vehemence, emphasis, fervency and intensity and in a cold-blooded manner, with malicious expression on his face, said: 'No, you did not. There was no money passed at all; you might have registered the nickel laying on the counter, but you never registered the money you got from your son.' "

The other allegations of the petition were sufficient to state a cause of action for slander. The judgment was entered upon a verdict instructed in favor of appellee, from which appellant has duly prosecuted her appeal to this court.

For the purposes of this appeal, we concede that appellant offered proof that appellee uttered the defamatory words at the time and place and under the circumstances charged in the petition, though he seriously insists by a counter proposition that a fatal variance exists between the proof and the allegations of the petition. On this concession the two points in the case are "publication" and "privilege."

■ It is said by 36 C. J. 1227, that, "in order to constitute a publication it is necessary that some third person understood the defamatory matter as relating to plaintiff." Defamatory words uttered only to the person concerning whom they are spoken, no one else being present or within hearing distance, or no one being present who is not protected by "privilege," are not actionable. Upon this proposition it was said, in Lemaster v. Ellis, 173 Mo. App. 332, 158 S. W. 904, 909: "There is a school of philosophy teaching that sound does not exist except in the ear of the hearer, and that Niagara rolls on in silence unless some ear is there to hear. While this may not be correct in the realm of acoustics, it is correct in the law of slander, with the further fact that no one hears who does not understand." See, also, 17 R. C. L. 315, 316; Cash Drugstore v. Cannon (Tex. Civ. App.) 47 S.W.(2d) 861. Appellant does not controvert these propositions, but insists that she raised an issue of fact within these propositions sufficient to send her case to the jury. This contention was properly denied by the trial court. The evidence is conclusive that no one except appellant, appellee's son-in-law, and the sheriff

of Nacogdoches county heard appellee utter the defamatory words. The patrons of the café who were present during the controversy were called as witnesses and denied that they heard anything that was said. One of them testified he heard a remark by appellant, but was not asked what it was.

Appellant insists that she raised an issue that some one may have been present who was not called as a witness. We have examined carefully every word of the testimony and must deny this contention. As we construe the evidence, every person in the café within hearing distance of appellee's office was offered by him as a witness and testified affirmatively that they heard nothing that was said.

■■ Appellee's cook, Theo Daniels, was present waiting upon the patrons who testified as witnesses. The proposition is made that the "publication" in his presence was actionable. It is not necessary to determine that point, that is, whether appellee was entitled to claim the defense of privilege as to Theo Daniels, because the language testified to by him was not the language pleaded by appellant. His testimony was as follows: "Gentlemen, I was at work behind the counter, probably ten or twelve feet from Mrs. Rivers, Mr. Feazell and Clifton Tannery, and I heard Mr. Feazell say something about Mrs. Rivers—about why she didn't take the twenty cents from her boy for breakfast."

We are giving appellant the full benefit of this testimony, though on cross-examination this witness testified that he heard nothing appellee said. While it is not necessary to prove the very words charged in the petition, yet the words must be substantially the same. The substance of the charge in this case was that appellant had refused to take money from her son, while the testimony of this witness was merely an inquiry as to why she did not take the 20 cents from her boy. This difference constituted a fatal variance. On the proposition of variance, the testimony of this witness was insufficient to raise an issue of publication in favor of appellant. 17 R. C. L. 421; 37 C. J. 65; Note 2 A. L. R. 370; Conlee v. State, 14 Tex. App. 222; Berry v. State, 27 Tex. App. 483, 11 S. W. 521; King v. Sassaman (Tex. Civ. App.) 54 S. W. 304.

Appellant makes the further contention that a negro dishwasher named Sherman Wade was in position to hear the defamatory words. This contention is denied. Sherman Wade was in the kitchen at the time, so far away that he could not have heard what was said.

■ After appellee had made the charge against appellant, she phoned the sheriff, and he came to appellee's office in answer to her message. While there the whole situation was explained to him. In this connec-

tion appellee insists that the sheriff did not hear appellee utter the defamatory words charged in the petition, but, for the purposes of this discussion, we concede that the issue was raised against appellee's contention. The utterance of the slanderous words in his presence and to him was not actionable, because he was there at the request of appellant. He heard it because appellant was willing for him to hear it. Laughlin v. Schnitzer (Tex. Civ. App.) 106 S. W. 908; Rosenbaum v. Roche, 46 Tex. Civ. App. 237, 101 S. W. 1164. Sustaining this conclusion, it is said by R. C. L. 320: "The maxim volenti non fit injuria has also been applied to alleged slanderous statements made in the presence of an officer, where the subject of the statements solicited them and sent for the officer for the express purpose of having the statements repeated in his presence."

 The utterance of the defamatory words in the presence of the son-in-law, Clifton Tannery, was qualifiedly privileged and was not actionable except upon proof of malice. There is not a scintilla of evidence in the record raising the issue of malice. Appellant had been in appellee's employment for five or six years. He had at all times been courteous towards her, had paid her wages regularly, and had never abused her in any way. This occasion was the first controversy between them. There is nothing in the record to impugn his good faith in making the accusation against appellant. Her proposition of malice rests on these grounds: (a) At her request and at the suggestion of the sheriff appellee refused to count the money in the cash register. He told both of them that they could go through the cash register if they wanted to, but it would not help them any. It appeared that appellee had the record from the machine of all items rung up by appellant and the tickets representing these items. There was no entry by the machine covering the breakfast ticket for appellant's son. Money was put in from time to time in the machine for which no ticket was made. However, appellant concedes this issue in the following language: "The record is full that the cash register could not have been checked, as there was no system of keeping the tickets and the money." (b) Appellee made the charge in a loud, angry voice. This contention is affirmatively denied by the Commission of Appeals in Simmons v. Dickson, 110 Tex. 230, 213 S. W. 612, 218 S. W. 365: "It is conceded that the publication was conditionally privileged, and that, to be actionable, it must have been published with actual or express malice; the burden of proof being cast upon the plaintiff to establish actual malice. Plaintiff contends, however, and the Court of Civil Appeals [170 S. W. 834] held that the jury might infer such malice from the vehe-

mence of the language used and the disproportion between the epithets applied to the plaintiff and the charges made against him. We are unable to concur in this conclusion. It is but the assertion in different language of the proposition that malice can be inferred or presumed from the fact of publication. When a publication is conditionally privileged, the law raises the presumption of good faith and want of malice; and to hold, in such a case, that malice can be inferred from the character of the language used alone would, in our opinion, destroy the force of the privilege." (c) Appellee discharged appellant in order that he might give her place to another woman. There is no evidence in the record raising this issue.

For the reasons stated, the judgment of the lower court is in all things affirmed.